J-A23015-14

2014 PA Super 218

D.K., : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
S.P.K., :
:
Appellant : No. 279 WDA 2014

Appeal from the Order January 16, 2014,
Court of Common Pleas, Allegheny County,
Family Court at No. FD 11-08220-006

BEFORE: DONOHUE, ALLEN and MUSMANNO, JJ.

OPINION BY DONOHUE, J.: **FILED OCTOBER 02, 2014**

S.P.K. ("Father") appeals from the order entered on January 16, 2014 by the Court of Common Pleas of Allegheny County, Family Division, granting D.K. ("Mother") primary physical custody of the parties' three children, J.K., S.K., and C.K. (collectively "the children") – ages nine, seven, and five respectively. After careful review of the record and applicable statutory and case law, we affirm. In doing so, we conclude, *inter alia*, that in a case such as this, which involves a custody determination where neither Mother nor Father is relocating and only the children stand to move to a significantly distant location, the relocation provisions of the Child Custody Act, 23 Pa.C.S.A. § 5337, are not *per se* triggered and the notice requirement of section 5337(c) does not apply. However, in such cases, the

trial court shall consider the relevant factors set forth in section 5337(h) insofar as they impact the final determination of the best interests of the children.

The relevant facts and procedural history in this case are as follows. Mother and Father married on October 19, 2002 and are the biological parents of the children. Following their marriage, Mother and Father established a residence in Leesburg, Virginia. Around 2008, Mother began to abuse alcohol. In December 2008, Mother went to the hospital where she discovered that she was pregnant with Mother and Father's third child, C.K., and that she had a high blood alcohol level in her body. Though Mother did not drink during her pregnancy with C.K., shortly after giving birth, Mother began drinking again regularly.

In 2009, as Mother's drinking problem continued to escalate, Father lost his job. Though Father was unemployed at this time, Mother claims that Father was rarely home. In March 2010, Mother entered rehab, which she was unable to complete. Mother claims that she was unable to complete rehab because her insurance only covered half of her stay and because Father and the kids needed her at home. Father claims that Mother simply quit. Mother checked into rehab again in July 2010.

In August 2010, Mother passed out at the parties' marital home from drinking too much alcohol and hit her head on a piece of furniture. The injury created a large amount of blood and paramedics transported Mother

to the hospital because of the injury. Both J.K. and S.K. report that this incident is one of their earliest memories.

In late September 2010, Mother reentered rehab and around the same time, Father took the children to his parents' home in Pittsburgh. Mother was under the impression that Father's and the children's stay in Pittsburgh was going to be temporary; however, Father stated that he had to make the move permanent because he needed help caring for the children and Mother was unable to do so. After moving to Pittsburgh, Father struggled to find employment, but testified that he was working fulltime by February 2011.

For the next several months, Mother continued to struggle with her alcoholism. In January 2011, Mother and Father signed an agreement that gave full primary and legal custody of the children to Father and granted Mother limited supervised custody. Mother claims that she signed the agreement because Father would not let her see the children. Father, on the other hand, claims that Mother made little to no effort to see the children from September 2010 to January 2011 and that even after she signed the agreement, she infrequently exercised her custodial rights. In September 2011, Mother moved in with her parents in North Carolina. Mother reports that she has been completely sober since November 16, 2011.

On January 24, 2012, Mother filed a complaint for custody in which she sought primary custody of the children. On March 19, 2012, the parties entered into a consent order by which Mother received supervised (by her

parents) custody of the children every other weekend and at certain times during the summer. Since January 2012, Mother claims that she has never missed a scheduled period of custody. Throughout this time, Father has made it difficult, in a variety of ways, for Mother to exercise her custodial rights with the children.

Since Mother filed her complaint for custody, the following also transpired. In September 2012, police arrested Father for driving under the influence ("DUI") after discovering him urinating on the side of the highway. In December 2012, Father became engaged to F.S., who he had been dating since July 2011.

The trial court held a trial to determine the custody of the children on August 1 and 13, 2013 and October 3 and 30, 2013. Additionally, the trial court held *in camera* interviews with the parties' two oldest children, J.K. and S.K., on October 28, 2013. On January 16, 2014, the trial court awarded primary physical custody of the children to Mother. On February 18, 2014, Father filed a timely notice of appeal.[1] Father filed contemporaneously with his notice of appeal his concise statement of

---

[1] We note that although Father filed his notice of appeal 33 days after the entry of the order from which he appeals in this case, it is still a timely notice of appeal because the thirtieth day of the 30-day appeal period fell on a Saturday, and the following Monday, February 17, 2014, was President's Day. **See** Pa.R.C.P. 106(b) ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

matters complained of on appeal pursuant to Rule 1925(a)(2) and (b) of the Pennsylvania Rules of Appellate Procedure. On appeal, Father raises the following issues for our review:

> 1. THE TRIAL COURT ERRED BY FAILING TO DISMISS [MOTHER]'S CLAIM FOR PRIMARY PHYSICAL CUSTODY, AND IGNORING THE STATUTORY REQUIREMENTS REGARDING RELOCATION (INCLUDING MOTHER'S FAILURE TO FILE A TIMELY AFFIDAVIT), AND BY, OVER FATHER'S COUNSEL'S CONTINUAL OBJECTIONS, PERMITTING MOTHER TO KEEP REOPENING HER CASE EVEN AFTER THE COURT OBSERVED, ON THE RECORD, THAT MOTHER HAD NOT MET HER BURDEN TO SHOW RELOCATION WAS IN THE CHILDREN'S BEST INTEREST.
>
> 2. THE TRIAL COURT ERRED IN DETERMINING THAT MOTHER MET HER BURDEN TO RELOCATE [THREE] YOUNG CHILDREN 500 MILES AWAY BECAUSE THE CHILDREN WILL HAVE BEEN IN ALLEGHENY COUNTY FOR [FOUR] YEARS BY THE TIME OF THEIR MOVE, BEEN IN NEARLY THE SOLE CARE OF FATHER, HAD FAMILY AND EXTENDED FAMILY HERE, WERE DOING WELL IN AND WERE ENTRENCHED IN SCHOOL, CHURCH AND COMMUNITY HERE, AND HAD ACTIVITIES AND FRIENDS HERE.
>
> 3. THE TRIAL COURT ERRED IN DETERMINING THAT MOTHER MET HER BURDEN TO RELOCATE [THREE] YOUNG CHILDREN 500 MILES AWAY BECAUSE THE CHILDREN HAVE LITTLE FAMILY AND FEW OR NO CONTACTS IN NORTH CAROLINA AND MOTHER FAILED TO PRESENT NEARLY ANY EVIDENCE REGARDING MEETING THE CHILDREN'S NEEDS IN NORTH CAROLINA, HAD NOT SPOKEN TO SCHOOL OFFICIALS OR COACHES, HAD NOT CHOSEN A SCHOOL, AND ONLY DID INVESTIGATION AFTER THE THIRD DAY OF TRIAL AND ONLY THEN AFTER THE COURT REPEATEDLY REMINDED MOTHER OF HER OBLIGATION TO DO SO.

4. BASED ON THE CHILDREN'S WELL ESTABLISHED CONTACTS, CHURCH, SCHOOL, ACTIVITIES AND FAMILY IN ALLEGHENY COUNTY AND MOTHER'S LACK OF INVESTIGATION/PREPARATION FOR ANY MOVE, THE TRIAL COURT FAILED TO ACT IN THE CHILDREN'S BEST INTEREST BY PERMITTING THE MOVE AND CHANGING PRIMARY CUSTODY.

5. THE TRIAL COURT ERRED BY, WHEN CONSIDERING THE BEST INTEREST OF THE CHILDREN, NOT GIVING APPROPRIATE WEIGHT TO MOTHER'S EXTREME ALCOHOLISM, THE CHANCE OF RECIDIVISM OF HER BEHAVIOR, ESPECIALLY GIVEN MOTHER'S FAILURE TO ENTER EVIDENCE REGARDING HER ABILITY TO REMAIN SOBER WHILE LIVING INDEPENDENTLY OR WITH THE STRESSORS OF RAISING THREE YOUNG CHILDREN, AND HER UTTER FAILURE TO RECOGNIZE THE SAME AS A PROBLEM, INSTEAD BLAMING FATHER FOR HER ALCOHOLISM.

Father's Brief at 12-13.[2]

For his first issue on appeal, Father claims that the trial court erred by failing to dismiss Mother's claim for primary physical custody. *Id.* at 47-50. Father's claim is based on the application of 23 Pa.C.S.A. § 5337, the relocation provision of the Child Custody Act, 23 Pa.C.S.A. § 5321, *et seq.* Father argues that Mother failed to comply with the relocation procedure set forth in 20 Pa.C.S.A. § 5337(c) because she failed to provide him with timely notice of her intention to relocate the children or the information section 5337(c)(3) requires the relocating party to provide to the nonrelocating

---

[2]  We note that we have reordered the issues that Father raises on appeal for ease of review.

party. Father's Brief at 47-48. Father further asserts that he did not receive the benefit of the provisions of section 5337(j)[3], which addresses how a court may consider a party's failure to provide reasonable notice. *Id.* at 49-50. Thus, Father's claim requires us to determine whether this case constitutes a relocation that *per se* triggers section 5337 of the Child Custody Act.

Issues of statutory interpretation are questions of law where "the appellate standard of review is *de novo* and the appellate scope of review is

---

[3] Section 5337(j) provides the following:

> **(j) Failure to provide reasonable notice.--**The court may consider a failure to provide reasonable notice of a proposed relocation as:
>
> > (1) a factor in making a determination regarding the relocation;
> >
> > (2) a factor in determining whether custody rights should be modified;
> >
> > (3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;
> >
> > (4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and
> >
> > (5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

23 Pa.C.S.A. § 5337(j).

plenary." ***C.B. v. J.B.***, 65 A.3d 946, 951 (Pa. Super. 2013) (quoting ***In re***

***Adoption of J.A.S.***, 939 A.2d 403, 405 (Pa. Super. 2007)), *appeal denied*,

70 A.3d 808 (Pa. 2013).  Regarding statutory interpretation, our Court has

long recognized the following principles of statutory construction set forth in

the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.*:

> The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or 'spirit' of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.
>
> Under Section 1921(c), the court resorts to considerations of 'purpose' and 'object' of the legislature when the words of a statute are not explicit... . Finally, it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we ... are permitted to examine the practical consequences of a particular interpretation.

***C.B.***, 65 A.3d at 951.  Moreover, our Supreme Court has stated, "it is

axiomatic that in determining legislative intent, all sections of a statute must

be read together and in conjunction with each other, and construed with

reference to the entire statute." ***E.D.B. ex rel. D.B. v. Clair***, 987 A.2d 681,

684 (Pa. 2009) (citation omitted).  In order to determine whether the instant

- 8 -

matter is a relocation case that *per se* triggers section 5337, we begin by examining the applicability of section 5337(c) to this case, the provision with which Father complains Mother did not comply.

The legislature enacted section 5337 specifically to deal with relocation matters. **See** 23 Pa.C.S.A. § 5337(a). In the definitions section of Title 23 dealing with child custody, relocation is defined as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322. Under this definition, while relocation is in part defined by a change in residence of the child, it is evident that a relocation as contemplated in the statute requires a negative custodial impact on a "nonrelocating party." Thus, the definition of relocation anticipates that the other party to the custodial relationship will be relocating since the phrase "nonrelocating party" has no meaning unless another party is relocating. Based solely on the statutory definition, we could conclude that the relocation provisions of the Custody Act set forth in section 5337 do not apply where neither party is relocating.

Further analysis of the relocation statutory requirements buttress this conclusion. Section 5337(c), which addresses the notice the party proposing relocation must provide to the nonrelocating party, states the following:

> (1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i) the 60th day before the date of the proposed relocation; or

(ii) the tenth day after the date that the individual knows of the relocation, if:

(A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60-day notice; and

(B) it is not reasonably possible to delay the date of relocation so as to comply with the 60-day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i) The address of the intended new residence.

(ii) The mailing address, if not the same as the address of the intended new residence.

(iii) Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv) The home telephone number of the intended new residence, if available.

(v) The name of the new school district and school.

(vi) The date of the proposed relocation.

(vii) The reasons for the proposed relocation.

> (viii) A proposal for a revised custody schedule.
>
> (ix) Any other information which the party proposing the relocation deems appropriate.
>
> (x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.
>
> (xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.
>
> (4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

23 Pa.C.S.A. § 5337(c).

Based on the information that section 5337(c)(3) requires the party proposing relocation to provide to the nonrelocating party, it is evident that the legislature did not intend for section 5337(c) to apply in a custody case, where both parents have lived in their current residences for some time, and neither parent is relocating. Rather, section 5337 is designed to give notice to a party with custody rights that the other custodial party intends to change his or her geographical location and a modification of a custody arrangement will be necessary to allow the relocating party to continue to exercise custody rights. Section 5337(c) obviously envisions a change in the

relocating party's geographical location that will impact custody and arms the nonrelocating party with the information necessary to assess the proposed change of circumstances. In a case such as this, where both parents remain in their established residences, there are no changed circumstances to assess. The challenge is solely to a change in the custody arrangement and not a party's relocation. Moreover, in a custody case where both parties continue to live in their current residences, the information required under section 5337(c) is either known or will be revealed as a matter of course in either the complaint for custody or the custody proceedings.

The requirements set forth in 23 Pa.C.S.A. § 5337(d) (Objection to Proposed Relocation) further exemplify the relocation provisions' intent to address situations where a party is relocating to a new geographical place. This section plainly differentiates between objections to the party's relocation and objections to modification of custody arrangements. Section 5337(d)(1) provides:

> (1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation. ***The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not.*** If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a

> counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities)[.]

23 Pa.C.S.A § 5337(d)(1) (emphasis added). While it is clear that every request for relocation pursuant to the statute implicates the custody of the child, the relocation provisions are not triggered unless one of the parties is relocating.

Other provisions of section 5337 likewise establish that it is a party's relocation that necessitates the inquiry. For example, section 5337(h)(6) requires a trial court, in determining whether to allow a proposed relocation to consider "[w]hether the relocation will enhance the general quality of life for the party seeking the relocation[.]" 23 Pa.C.S.A. § 5337(h)(6). Likewise, section 5337(l) provides that "[i]f a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation." 23 Pa.C.S.A. § 5337(l).

Like the definitional reference in section 5322, several provisions of section 5337 also reference a nonrelocating party. *See* 23 Pa.C.S.A. § 5337(d), (f), (h), (j). Because the definition of relocation and several provisions of section 5337 explicitly refer to a "nonrelocating party," by implication, section 5337 must anticipate that a party is relocating. Based upon the foregoing statutory analysis, we conclude that where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered. In the case

before us, because Mother was not relocating, she therefore was not required to comply with the notice provisions of section 5337(c).

Although we have determined that this case does not *per se* trigger section 5337, we do not hold that a trial court cannot or should not consider the factors of section 5337(h) in a case where a request for modification of the custody order involves the change of residence of the child to a significantly distant location. The enactment of sections 5328(a) and 5337(h) and the development of the case law preceding the two provisions supports this notion.

"With any child custody case, the paramount concern is the best interests of the child." *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). The legislature enacted section 5328(a) of the Child Custody Act in order to delineate the "factors the trial court must consider when awarding any form of custody." *Id.* at 651 (citation omitted). Section 5328(a) sets forth a list of 16 factors that trial courts must consider "in a best interests of the child analysis in making any custody determination." *E.D. v. M.P.*, 33 A.3d 73, 79-80 (Pa. Super. 2011) (citing 23 Pa.C.S.A. § 5328(a)) (footnote omitted). The 16 factors listed in section 5328(a) that trial courts must consider when determining a child's best interest include:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

42 Pa.C.S.A. § 5328(a).

Section 5337(h) requires that the trial court consider the following factors when a party is relocating:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

In a case predating the enactment of sections 5328(a) and 5337(h), our Court addressed a factual scenario similar to the instant matter. In *Clapper v. Harvey*, 716 A.2d 1271 (Pa. Super. 1998), the mother, who was living in Florida, sought custody of her child, who was living with the father in Pennsylvania. *Id.* at 1272-73. It was the mother's contention that "a proper 'best interests of the child' analysis in a case where the petitioning parent seeks to relocate the child to another jurisdiction includes consideration of the factors outlined in *Gruber*." *Id.* at 1274. *Gruber v.*

*Gruber*, 583 A.2d 434 (Pa. Super. 1990), which also predated the enactment of section 5337(h), set forth a three-factor test for trial courts to use "[i]n order to decide whether a custodial parent and children shall be permitted to relocate at a geographical distance from a non-custodial parent[.]" *Id.* at 439.  The *Gruber* test required trial courts to consider the following factors:

> First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent.

> \* \* \*

> Next, the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it.

> \* \* \*

> Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Id.*  In *Clapper*, we pointed out that the *Gruber* factors were typically only "applied in cases where the 'custodial' parent wishes to relocate with the child, and not where the non-custodial parent seeks custody of the child and requests the child's relocation to a different state."  *Clapper*, 716 A.2d at 1274.  Nevertheless, this Court held that the "*Gruber* factors should be

considered in appropriate cases, as part of the overall best interests analysis, when a parent wishes to relocate a child to another jurisdiction."

*Id.* Our Court reasoned:

> [E]ven in custody cases involving the relocation of one or both parents, the ultimate objective in resolving the custody matter remains the best interests of the child. The determination of a child's best interests involves the consideration of **all** relevant factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. It follows then that the factors outlined in **Gruber**, if deemed relevant and likely to affect the child's physical, intellectual, moral and spiritual well-being, should also be applied and considered in any custody case involving the relocation of either the custodial or non-custodial parent.

*Id.* (internal citations omitted; emphasis in original). Thus, our Court determined that trial courts should apply the relevant **Gruber** factors in a case where neither parent was relocating, and only the child stood to move to a new geographical location. **See id.**; **see also Reefer v. Reefer**, 791 A.2d 372, 377 (Pa. Super. 2002) (applying the **Gruber** factors in a custody case where neither parent relocated, but the child stood to move a geographical distance).

Upon examining the custody factors of section 5328(a) and the relocation factors of section 5337(h), we reach a conclusion in this case consistent with **Clapper**. In a custody case where neither parent is relocating, but the children stand to move a significant distance, trial courts should still consider the relevant factors of section 5337(h) in their section

5328(a) best interests analysis. Several of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a). Trial courts should also consider those relevant factors of section 5337(h) that are not otherwise encompassed directly or implicitly by the section 5328(a) factors pursuant to the catchall provision of section 5328(a)(16).

For example, the language in section 5337(h)(4), which requires a trial court to consider the child's preference, is nearly identical to the language in section 5328(a)(7). *Compare* 23 Pa.C.S.A. § 5337(h)(4), *with* 23 Pa.C.S.A. § 5328(a)(7) (requiring the trial court to consider "[t]he well-reasoned preference of the child, based on the child's maturity and judgment"). Likewise, section 5337(h)(9), which requires the trial court to consider "[t]he present and past abuse committed by a party or member of the party's household" is closely related to section 5328(a)(2). *Compare* 23 Pa.C.S.A. § 5337(h)(9), *with* 23 Pa.C.S.A. § 5328(a)(2) (mandating consideration of "[t]he present and past abuse committed by a party or member of the party's household"). Additionally, section 5337(h)(5), which requires the trial court to consider "[w]hether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party," is similar to section 5328(a)(8). *Compare* 23 Pa.C.S.A. § 5337(h)(5), *with* 23 Pa.C.S.A. § 5328(a)(8) (requiring the trial court to consider "the attempts of a parent to turn the child against the

other parent"). Further, section 5337(h)(1), which requires the trial court to consider "[t]he nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life," encompasses subsections (3), (5), and (6) of section 5328(a), which require consideration of the parental duties performed by each party, 23 Pa.C.S.A. § 5328(a)(3), the availability of extended family, 23 Pa.C.S.A. § 5328(a)(5), and sibling relationships, 23 Pa.C.S.A. § 5328(a)(6). *Compare* 23 Pa.C.S.A. § 5337(h)(1), *with* Pa.C.S.A. § 5328(a)(3), (5), (6).

Additionally, in any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)). Even though these three factors are not directly or implicitly encompassed in section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to section

5328(a)(16), which requires a trial court to consider "any other relevant factor" in making a custody determination. 23 Pa.C.S.A. § 5328(a)(16).

In summary, based on the foregoing statutory authority and case law, we hold that a custody case where neither parent is seeking to relocate and only the children would be moving to a significantly distant location if custody shifted from one parent to another does not *per se* trigger section 5337 of the Child Custody Act. Thus, the notice requirement of section 5337(c) does not apply in such cases. Trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interest analysis. As we have explained, several of the relevant factors of section 5337(h) are encompassed, directly or implicitly, by the custody factors listed in section 5328(a). Any relevant section 5337(h) factor that is not expressly encompassed in section 5328(a) should be considered by the trial court under the catchall provision of section 5328(a)(16).

Accordingly, in this case,[4] Mother was not required to provide Father with notice of relocation pursuant to section 5337(c), Father was not entitled

---

[4] The case before us is somewhat factually similar to *B.K.M. v. J.A.M.*, 50 A.3d 168 (Pa. Super. 2012). In that case, when the father initiated custody proceedings in the United States, the mother was living in Sweden with their three children. *Id.* at 170-71. Although the father was the party seeking to bring the three children to the United States, the mother petitioned for relocation. *Id.* at 171. The trial court in that case pointed out that the mother never formally filed a petition for relocation, but rather did so verbally. *Id.* at n.1. The trial court stated that the mother's verbal notice was sufficient and it allowed the case to proceed as a relocation matter, but that the decision was without prejudice as to the parties' rights

to the benefit of section 5337(j), and the trial court did not err by failing to dismiss Mother's claim on those grounds.

In the remaining issues that Father raises on appeal, he challenges the trial court's conclusions regarding several of the custody factors of section 5328(a) and relocation factors of section 5337(h). Father's Brief at 23-46. In his second, third, and fourth issues, which Father addresses together, Father sets forth each of the custody factors from section 5328(a) and relocation factors from section 5337(h) that he believes the trial court decided incorrectly. *Id.* at 23-45. In his fifth issue, Father claims that the trial court failed to afford appropriate weight to the evidence of Mother's alcoholism. *Id.* at 45-46.

We begin by acknowledging our scope and standard of review for custody cases:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or

---

to file the appropriate appeal. *Id.* The father did not challenge the sufficiency of the mother's verbal notice on appeal. *Id.* As a result, our Court reviewed the case under both section 5328(a) and 5337(h). *See id.* at 172-73. Because the father did not challenge the mother's verbal notice, the issue before us in the instant matter was never before our Court in *B.K.M. v. J.A.M. See id.* at 171.

> inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (quoting *Durning v. Balent/Kurdilla*, 19 A.3d 1125, 1128 (Pa. Super. 2011)).

In its custody order, the trial court listed each of the factors of section 5328(a) and section 5337(h) and explained how it decided each factor. Trial Court Order, 1/6/14, at 4-14. The evidence of record supports the trial court's decision to award primary custody of the parties' three children to Mother. Though Mother has a well-documented struggle with alcohol abuse, she has been completely sober since November 16, 2011. N.T., 8/1/13, at 61. Mother lives with her parents in a stable home that the children enjoy visiting. *See id.* at 59, 322; N.T., 10/28/13, at 32. Prior to Mother and Father's separation, Mother was the children's primary caretaker. N.T., 8/1/13, at 26, 52-53. Even though the children spend most of their time away from Mother, they appear to have a deep bond with her and she is profoundly devoted to them. *See* N.T., 8/13/13, at 33, 122. Dr. Marlin, who conducted psychological evaluations of both Mother and Father, testified that Mother was a sincere, honest, and caring person who is a dedicated parent. *See id.* at 38-39, 101, 122.

While Mother readily admits to previously abusing alcohol, the record indicates that Father is in denial about his struggle with alcohol. There is substantial evidence in the certified record indicating that Father abuses alcohol, including testimony that Father has several drinks per night, several nights per week, that he drove drunk with J.K. and S.K. in the car, and that he was arrested for DUI in September 2012. N.T., 8/1/13, at 27-28, 296-99; N.T., 10/3/13, at 190-91.

Although the children have attended school and participated in activities in Pittsburgh, and the extent and quality of those available in North Carolina was not entirely clear at the hearing, these considerations were not the trial court's focus in reaching its decision. Rather, the trial court was concerned about the children's overall stability, which it found would be better served in Mother's care. Trial Court Memorandum, 1/16/14, at 5-6, 12; Trial Court Opinion, 4/15/14, at 4-5. Father and the children have lived in three different homes in the Pittsburgh area over the past three to four years and Father is once again unemployed. *See* N.T, 10/3/13, at 68, 131-32. Dr. Marlin's psychological evaluation revealed that Father is an insincere person who is controlling and manipulative. N.T., 8/13/13, at 39-42. Dr. Marlin testified that she believed Father has a number of psychological issues that he refuses to address. *See id.* at 43-44.

Additionally, Father has made it difficult for Mother to exercise her custodial rights. N.T., 8/1/13, at 308. Father is not flexible in scheduling

the children's time with Mother, he forces Mother to do most of the driving from North Carolina when she wishes to spend time with the children, he often refuses to speak with Mother, and he frequently disrupts her video chats with the children. *Id.* at 88-90, 92, 94-95, 304, 313. Father also had S.K. and C.K. baptized without telling Mother. *Id.* at 132-34. Furthermore, Father does not discourage C.K. from calling F.S., Father's fiancée, "Mama," and F.S. even testified that she refers to herself as "Mama" to C.K. N.T., 10/3/13, at 41-42; N.T., 10/30/13, at 55-56.

Issues two through five raised by Father on appeal all challenge the weight afforded to the evidence by the trial court. Indeed, in his fifth issue, Father expressly states that the trial court did not afford the appropriate weight to the evidence of Mother's alcoholism. Father's Brief at 45-46. As previously stated, our standard of review makes clear that "with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *J.R.M.*, 33 A.3d at 650. Here, in his second, third, and fourth issues, Father challenges the trial court's decision regarding nearly all of the factors of section 5337(h) and the first, third, fourth, fifth, ninth, tenth, and twelfth factors of section 5328(a). *See* Father's Brief at 26-45. Pursuant to our review of the record, we conclude that there is substantial evidence supporting the findings that the trial court reached on each factor of section 5328(a) that Father challenges, including those factors implicated by the

distance between Mother and Father's homes pursuant to section 5328(a)(16). Accordingly, because Father asks us to reweigh the evidence, he is not entitled to relief on his remaining issues.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2014