J-A17020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONALD RUSSO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VICTORIA COSTABILE | : | |
| | : | |
| Appellant | : | No. 724 EDA 2021 |

Appeal from the Order Entered March 12, 2021
In the Court of Common Pleas of Lehigh County
Domestic Relations at No(s): 2016-FC-1489

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                          **FILED OCTOBER 4, 2021**

Appellant, Victoria Costabile ("Mother"), appeals from the order entered

in the Lehigh County Court of Common Pleas, which awarded Appellee, Donald

Russo ("Father") primary physical custody of the parties' minor child ("Child").

We affirm.

The relevant facts and procedural history of this appeal are as follows:

> Father and Mother are the parents of the Child, [who was
> born in] 2015.  On November 14, 2016, Father initiated this
> action by filing a petition for custody seeking shared physical
> custody.  On December 6, 2016, Mother filed an answer and
> counterclaim, denying the averments in Father's petition
> and requesting primary physical custody of the Child.  On
> December 14, 2016, the [court] entered an interim order by
> agreement of the parties that provided for shared legal
> custody, primary physical custody to Mother, and partial
> physical custody on alternating weekends to Father.  After
> a pre-trial conference …, the parties agreed to entry of a

_____

[*] Retired Senior Judge assigned to the Superior Court.

final order.  The March 30, 2017 final custody order provided for shared legal custody of the Child and shared physical custody of the Child on a 5-day rotating schedule.  The non-custodial parent was also permitted a Facetime call with the Child every evening at 6:00 p.m.  Although the arrangement has survived for nearly four years, impending school enrollment necessitates a change in the custodial schedule.

In June 2020, the co-parenting relationship began to unravel.  Father, based upon safety concerns for the Child while in Mother's custody, did not return the Child as per the court order, and instead, on June 9, 2020, he filed an emergency petition to modify custody order to which Mother responded with her … answer and counterclaim seeking emergency relief … on June 12, 2020.  The Child was returned to Mother; however, both pleadings were dismissed based upon a procedural error.  After the Child was returned, Mother filed [a] petition for contempt and modification of a custodial order and her emergency petition for special relief on June 19, 2020.  The emergency petition for special relief was scheduled for a hearing on June 26, 2020 and Father was ordered to appear with the Child.  The matter was continued to the July 13, 2020 custody conference … due to the birth of Mother's third child on June 25, 2020.  Prior to the conference, on July 10, 2020, Father filed his answer to petition for contempt and modification counterclaim and the answer to emergency petition for special relief and counterclaim.  At the custody conference, the parties were unable to reach an agreement.  On August 24, 2020, the custody hearing officer recommended that the matter be listed for trial.

On October 15, 2020, Father filed an amended answer to petition for contempt and modification and counterclaim and a separate motion for discovery in a custody matter related to the child abuse investigations in New Jersey and in Lehigh County.  On October 20, 2020, a pre-trial conference was held by the [court].  On October 28, 2020, the court granted Father's motion for discovery in a custody matter and allowed Father to send subpoenas for certain medical and Children and Youth Services records.

On November 6, 2020, day one of the custody trial was held in-person attended by Father, and his legal counsel … and

> Mother and her legal counsel …. On January 22, 2021, day two of the custody trial was held, and on February 9, 2021, day three of the custody trial was held, both by advanced communication technology….

(Trial Court Opinion, filed March 12, 2021, at 2-3) (some capitalization omitted).

On March 12, 2021, the court entered an order granting primary physical custody to Father and partial physical custody to Mother on alternating weekends, or by agreement of the parties. The custody order also provided that during summer breaks, Father and Mother will share physical custody on an alternating week-on/week-off schedule. The court denied Mother's petition for contempt and custody modification but granted Father's counterclaim. Further, the court denied both Mother's emergency petition for special relief and Father's counterclaim to the emergency petition. On April 5, 2021, Mother timely filed a notice of appeal and concise statement of errors.

Mother now raises the following issues on appeal:

> Did the trial court err in failing to consider and apply the relocation factors pursuant to 23 Pa.C.S.A. § 5337(h) as the trial court's award of primary custody to [Father] in the state of New Jersey constitutes a relocation?
>
> Did the trial court err and abuse its discretion in failing to award [Mother] primary physical custody of the minor child based upon the statutory factors enumerated in 23 Pa.C.S.A. § 5328(a)?
>
> Did the trial court err and abuse its discretion in failing to appropriately consider the minor child's sibling relationships pursuant to 23 Pa.C.S.A. § 5328(a)(6)?

- 3 -

Did the trial court err and abuse its discretion by improperly relying upon the unfounded abuse allegations against [Mother], and in disregarding [Father's] willful actions in denying [Mother's] access to the minor child, as it pertains to factor #1 (which party is more likely to encourage and permit frequent and continuing contact between the child and another party) and factor #8 (the attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm)?

(Mother's Brief at 17-18).

In her first issue, Mother emphasizes that she lives in Pennsylvania and Father lives approximately two (2) hours away in New Jersey. Mother acknowledges that neither party sought to relocate their primary residence. Nevertheless, Mother asserts that the award of primary custody to Father amounted to "a change of residence of the child to a significantly distant location." (*Id.* at 49). Under these circumstances, Mother argues that the court should have considered the relocation factors, set forth in Section 5337(h), in making this custody determination. Mother concludes that the court's failure to consider the relocation factors constituted an abuse of discretion and error of law. We disagree.

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its

- 4 -

factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted).

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

*M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (quoting *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super. 2011)).

The Child Custody Act provides:

**§ 5328. Factors to consider when awarding custody**

**(a)      Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 5 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not

evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

"Relocation" is defined as, "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). "The legislature enacted section 5337 specifically to deal with relocation matters." *D.K. v. S.P.K.*, 102 A.3d 467, 472 (Pa.Super. 2014). "While it is clear that every request for relocation pursuant to the statute implicates the custody of the child, the relocation provisions are not triggered unless one of the parties is relocating." *Id.* at 474.

[S]ection 5337 is designed to give notice to a party with custody rights that the other custodial party intends to change his or her geographical location and a modification of a custody arrangement will be necessary to allow the relocating party to continue to exercise custody rights.

*     *     *

Although we have determined that this case does not *per se* trigger section 5337, we do not hold that a trial court cannot or should not consider the factors of section 5337(h) in a case where a request for modification of the custody order involves the change of residence of the child to a significantly distant location. The enactment of sections 5328(a) and 5337(h) and the development of the case law

preceding the two provisions supports this notion.[1]

_____

[1] Section 5337 sets forth the factors governing relocation in relevant part as follows:

### § 5337.  Relocation

\*    \*    \*

**(h)    Relocation    factors.—**In    determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)    The nature, quality, extent of involvement and duration of the child's relationship with the party proposing  to  relocate  and  with  the  nonrelocating party,  siblings  and  other  significant  persons  in  the child's life.

(2)    The age, developmental stage, needs of the child and the likely impact the relocation will have on  the  child's  physical,  educational  and  emotional development,  taking  into  consideration  any  special needs of the child.

(3)    The    feasibility    of    preserving    the relationship between the nonrelocating party and the child    through    suitable    custody    arrangements, considering the logistics and financial circumstances of the parties.

(4)    The    child's    preference,    taking    into consideration the age and maturity of the child.

(5)    Whether there is an established pattern of conduct  of  either  party  to  promote  or  thwart  the relationship of the child and the other party.

(6)    Whether the relocation will enhance the general  quality  of  life  for  the  party  seeking  the

_(Footnote Continued Next Page)_

- 8 -

* * *

[I]n any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)).  Even though these three factors are not directly or implicitly encompassed in section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to section 5328(a)(16), which requires a trial court to consider "any other relevant factor" in making a custody determination.

_____

relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7)    Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8)    The reasons and motivation of each party for seeking or opposing the relocation.

(9)    The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10)   Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

*Id.* at 473, 474, 477.

Instantly, the trial court recognized that neither parent was seeking to relocate with Child:

> At all relevant times, including during Mother and Father's brief relationship, Father has lived in New Jersey. His address has not changed and he has not relocated. Prior to entry of the subject final custody order, Mother agreed to entry of the March 30, 2017 order which provided for shared legal custody and shared physical custody of the Child on a 5-day rotating schedule, with the minor Child spending equal amounts of time at Mother's residence in Pennsylvania and Father's residence in New Jersey. For most of his life, the Child has spent equal amounts of time at two residences in two different states. Under the terms of the March 12, 2021 final custody order, neither of the minor Child's residences has changed; only the amount of time that the Child spends at each residence has changed.

(Trial Court Opinion, filed April 22, 2021, at 3) (some capitalization omitted).

Because neither party is relocating, this case does not *per se* trigger Section 5337. **See D.K., supra**. Additionally, absent a bald assertion in Mother's brief, there is no support for her position that the current custody order changed Child's residence "to a significantly distant location." **Compare** **id.** (examining trial court's evaluation of Section 5328(a) and Section 5337(h) factors in case where court modified custody; children went from primary custody with Father in Pittsburgh to primary custody with Mother in North Carolina). Even if the current order changed Child's residence to a significantly distant location, the court adequately considered Child's age and developmental stage, the feasibility of preserving the relationship between

Child and Mother, and how the change in residence would enhance Child's general quality of life. (*See* Trial Court Opinion, filed March 12, 2021, at 7-9, 17).

Specifically, the court emphasized that Father had taken a proactive approach in developing a routine for Child to transition from daycare to elementary school:

> The Child's typical routine at Father's house begins with family breakfast, after Father leaves for work Paternal Grandmother takes the Child to daycare; Father picks the Child up from daycare on his way home from work. This schedule continued from April 2017 until the COVID-19 pandemic began in March 2020, when the daycare closed. During the summer of 2020, Paternal Grandmother, a paraprofessional who works with special needs children, provided childcare for Father.
>
> Near the end of July 2020, Father advised Mother that he was looking at schools for the Child for September. Mother did not object and advised him that she had purchased an at home program for pre-kindergarten that she was willing to share with Father. On August 19, 2020, Father enrolled the Child at Children of the King Academy. Given the rotating five-day custodial schedule, the Child only partially participates in the early learning curriculum at Children of the King Academy, as he generally attends two to three days weekly. On the other days of the week and while in Mother's custody, the Child is instructed by Mother with the home educational program.
>
> While Mother disagreed with Father's use of daycare, arguing that the Child was too young, daycare enabled Father to work and maintain a steady lifestyle for the Child. His choice of childcare was appropriate and his decision is not outweighed by Mother's role as a homemaker. Father has demonstrated that he thinks ahead in anticipation of the Child's future. He proposed that the Child attend school in the Tinton Falls School District in New Jersey where [Father's] family has community roots. Father worked in

> the school district as a substitute teacher and Maternal Grandmother is currently employed there, assisting in grades 3 through 5.  In September 2021, the Child would attend Kindergarten at the Mahala F. Atchinson Elementary School, which has grades K through 2.  It is important to note that Father has already established a daily schedule and a routine for a school day, from breakfast to bedtime.  In doing so, he has provided for stability and continuity in the Child's education, family and community life.

(***Id.*** at 8-9) (internal footnote omitted).  (***See also*** N.T. Custody Trial, 2/9/21, at 6-7, 16-17, 123-126).  On this record, the court did not run afoul of ***D.K., supra***, and Mother is not entitled to relief on her first claim.

In her second, third, and fourth issues, Mother argues that the court did "not specifically reference and apply all of the custody factors pursuant to 23 Pa.C.S.A. § 5328(a)."  (Mother's Brief at 58-59).  Regarding the discussion of the factors provided in the trial court opinion, Mother claims that the court largely ignored the favorable evidence she presented.  Mother emphasizes her witnesses' testimony concerning: her ability to provide a routine and stability for Child; Father's established pattern of changing Child's healthcare providers and therapists; and Father's attempts to turn Child against Mother.  Mother also insists that the court did not adequately consider Child's relationship with Mother's other children.

Additionally, Mother argues that the court heavily relied on the unfounded abuse allegations rather than the facts or recommendations made by the investigating agencies.  Mother maintains that the court disregarded the undisputed facts of record regarding "Father unilaterally [withholding]

contact with [Child] from Mother." (*Id.* at 70). Mother concludes that the court erred and abused its discretion in failing to award her primary physical custody of Child. We disagree.

In expressing the reasons for its custody decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M., supra* at 336. Further:

> The parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009).

Instantly, our review of the record confirms that the trial court considered all of the custody factors pursuant to Section 5328. (*See* Trial Court Opinion, filed March 12, 2021, at 5-18). On appeal, Mother essentially asks this Court to reweigh the Section 5328(a) factors in her favor. Nevertheless, we have carefully reviewed the record in this case, and the record supports the trial court's findings. *See M.J.M., supra.*

Regarding its analysis of the abuse allegations, the court explained:

> Father does not dispute that he withheld the Child from Mother on June 8, 2020 contrary to the March 30, 2017 court order. Nevertheless, after the cases were closed and the allegations deemed unfounded, Father returned the Child to Mother and they resumed the court ordered custodial schedule, with appropriate make-up time to

Mother. Father had a reasonable basis to withhold the Child, especially given the parallel investigations in which not all of the information was provided to the other.

*    *    *

Other than the June 2020 events, neither party had withheld the Child from the other parent and in general, each had encouraged contact with the other. The custodial agreements of 2016 and 2017 are examples of how each parent encouraged the other to be involved in the Child's life, despite the distance between households.

*    *    *

The court concludes that the parties are neutral as to which party is more likely to encourage and permit frequent and continuing contact between the child and another party. Further, the court finds that although the investigation revealed no abuse, there were legitimate concerns which justified Father's withholding of the Child for the short period of time, especially given that the investigation involved two states during the COVID-19 pandemic. Other than the June 2020 allegations, there were no allegations of abuse addressed by the parties.

Mother asserted in her petition that she believed Father withheld the Child during the investigations in a deliberate attempt to alienate and poison the Child from Mother in an attempt to gain a custodial advantage. The [c]ourt finds that each party similarly engaged in actions to gain a custodial advantage. Mother reported to [Lehigh County Office of Child and Youth Services] that she is concerned about the Child being affected psychologically, that she does not believe Father will harm him, but that Father will try to get him to say stuff that is not true, and that Father has been trying to obtain primary custody of the Child for years. However, Mother did not present credible testimony to support her allegations.

(*See* Trial Court Opinion, filed March 12, 2021, at 17-18) (internal footnotes

and some capitalization omitted).

- 14 -

When read in context, the court did not actually place undue emphasis on the allegations of abuse. Rather, the court considered this episode as one of multiple disagreements between the parties after it became apparent that a shared custody schedule might no longer be feasible. As the court noted, these conflicts caused the parties' "relationship to degenerate, contrary to the history of their relationship." (*Id.* at 7). Again, our review of the record confirms that the court awarded primary physical custody to Father based upon its finding that Father will provide continuity and a routine for Child as he transitions into elementary school. *See* Pa.C.S.A. § 5328(a)(4), (10). We cannot say the court abused its discretion in assigning weight to this factor. *See S.J.S., supra*; *R.M.G., Jr., supra*. Accordingly, we affirm the custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2021