J-A11031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| K.J.P. | |
| Appellee | No. 3156 EDA 2014 |

Appeal from the Order of October 7, 2014
In the Court of Common Pleas of Pike County
Civil Division at No.: 1832 Civil 2013

BEFORE:  FORD ELLIOTT, P.J.E., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED MAY 06, 2015**

B.M. ("Father") appeals the October 7, 2014 order in which the trial court granted primary physical custody of the parties' three minor children to K.J.P. ("Mother").  We affirm.

Father and Mother, who were never married, have three children: A.M. (born in February 2006), B.L.M. (born in September 2007), and L.M. (born in January 2010).  Mother has an older daughter, M.N. (born in June 2000), from a prior relationship.  The parties started living together in August 2003. Notes of Testimony ("N.T."), 10/2/2014, at 91.  The parties separated in January 2013.  *Id.* at 31.

Mother and Father filed reciprocal Protection from Abuse ("PFA") petitions.[1] In January 2013, as part of the order resolving the PFA petitions, Mother was awarded primary physical custody of the children and Father received partial custody.[2] The parties shared legal custody. The PFA order expired in April 2013, but the parties continued to abide by the custody arrangement set forth in the order.[3] Trial Court Findings of Fact, Conclusions of Law, and Order ("Order"), 10/7/2014, at 2.

On November 14, 2013, Father filed a complaint seeking primary custody. On October 2, 2014, the trial court held a custody hearing.

At the hearing, Father testified that he had been living with his girlfriend, J.R., since March 2014. N.T. at 10. Father testified that he works for his parents' company doing HVAC repair, which provided him with flexibility in his schedule. *Id.* at 13. Father typically works from 9 a.m. until 3 p.m., although he is on-call when the temperature drops below freezing and can get called out on nights or weekends. *Id.* at 34-35. Father testified that, if he is unable to be home during his custody time, J.R. or his mother

---

[1] The PFA petitions are not part of the certified record and neither party testified regarding the exact dates that the petitions were filed. From the testimony, it appears that the petitions were filed in late December 2012 or early January 2013.

[2] This order also is not part of the certified record.

[3] Father has custody of the children every Tuesday overnight and the first, second and fourth weekends of the month from Friday evening until Sunday evening. N.T. at 12.

watch the children. *Id.* at 18. Father asserted that Mother had left the children unsupervised or had left the children in the care of M.N. *Id.* at 19-23.

Father testified that the two older children were doing well in school. *Id.* at 25. Father noted that, if awarded primary custody, the children would have to change schools. *Id.* at 12. The older children also are involved in various sports. *Id.* at 26. Despite the prior custody order expiring, the parties remained on the same schedule and were able to agree to occasional modifications when one parent or the other wanted additional time with the children for vacations or other events. *Id.* at 33-34.

Father testified that, toward the end of their relationship, Mother was drinking more heavily and the bulk of parenting responsibilities fell upon him. N.T. at 29. Father believed that Mother had a drinking problem and testified that Mother would not return home after her bartending shifts until 6 or 8 a.m. *Id.* at 23. Father alleged that Mother sometimes was violent and angry when she drank and that the children witnessed this behavior. *Id.* at 50-51. Despite Father's concerns about Mother's drinking, he consented to the initial custody arrangement that provided Mother with primary custody. *Id.* at 43.

J.R. testified that Father had a good relationship with the children and that he was a good father. N.T. at 58-60. S.M., Father's brother, also described Father as an involved, caring parent. *Id.* at 71-72, 74.

S.M. testified that he lived with the parties in fall 2012, and that, during that time, Mother often would return home intoxicated. *Id.* at 67-68. S.M. recounted one occasion when Mother came home and started breaking things and screaming while the children were present. *Id.* at 68.

Because of the allegations regarding Mother's alcohol use, the trial court ordered a pre-trial alcohol assessment of Mother. Erin Gilpatrick, a licensed drug and alcohol counselor with Catholic Social Services, conducted the psychosocial evaluation. N.T. at 6. Ms. Gilpatrick recommended that Mother participate in three individual sessions following the evaluation. *Id.* at 7. Mother was cooperative in the sessions and she was discharged successfully from treatment. *Id.* at 9.

Mother testified that she stayed home after A.M. was born. N.T. at 92. Mother was home with the children full-time until A.M. was four, when the two oldest began to attend a half-day pre-school. *Id.* at 95. Mother bartended on occasion, at most one night per week. *Id.* at 93. Mother testified that, at the time of the hearing, she was doing an externship as part of her training for a medical assistant position. *Id.* at 104. She anticipates being hired by the office where she did her externship after she completes her training and to work a schedule that allows her to be available to the children before and after school. *Id.* at 104-05.

Mother testified that the parties had followed the custody schedule set forth in the PFA order even after it expired and the parties were able to agree on custody for holidays and vacations that were not outlined in the

order. *Id.* at 100-02. Mother stated that she attends most of the children's games and practices. *Id.* at 117-19. Mother testified that she was the primary caregiver for the children, taking them to the doctor and dentist both before and after separation. *Id.* at 121-22. The children do well in school and have good attendance. *Id.* at 123-24.

Mother admitted that she developed a problem with alcohol use after M.N.'s father committed suicide in 2011. *Id.* at 109-10. Mother stated that she was depressed and starting drinking to feel better. *Id.* at 109. Mother acknowledged that she would drink after bartending three nights a week and would stay out late. *Id.* at 110-11. Mother sought out counseling in December 2012 and attended for approximately three months. *Id.* at 130. Mother testified that she reduced her drinking and she does not drink when the children are in her custody. *Id.* at 112. Mother participated in the three recommended sessions with Catholic Social Services and was discharged. *Id.* at 128.

On October 7, 2014, the trial court issued its findings of fact, conclusions of law, and order. The court awarded primary custody to Mother and partial custody to Father. Father was awarded custody every Tuesday overnight and every first, second, and fourth weekend of the month from Friday evening until Monday evening. Order at 9. The trial court found that the schedule that the parties had been following had served the children's best interests. *Id.*

On November 4, 2014, Father timely filed a notice of appeal. Father did not file a concise statement of errors complained of on appeal with his notice of appeal as is required by Pa.R.A.P. 1925(a)(2)(i). However, the trial court ordered a concise statement pursuant to Pa.R.A.P. 1925(b), and Father timely complied. Because Father filed a concise statement and the trial court has responded to the merits of Father's appeal, we will overlook this procedural error. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that failure to file concise statement contemporaneously with notice of appeal results not in automatic waiver for failure to file a timely concise statement, but will be decided case-by-case).

Father raises three issues for our review:

A. Whether the trial court erred as a matter of law and abused its discretion in awarding primary physical custody to [Mother] since based upon the evidence presented during the custody trial, primary physical custody should have been awarded to [Father].

B. Whether the trial court erred as a matter of law and abused its discretion in that it improperly applied and weighed the custody factor[s]/considerations set forth in 23 Pa.C.S.A. § 5328.

C. Whether the trial court erred as a matter of law and abused its discretion in finding that [Mother] was providing proper care for the children and that when she is not available, she arranges proper and adequate child care, since such a finding was not substantiated by the evidence.

Father's Brief at 12 (footnote omitted). All three of Father's issues are intertwined and contest the trial court's findings of fact and the weight that

the trial court attributed to those findings. Father argues the issues together and we will address them together.

Our scope and standard of review are well-settled.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa. Super. 2014).

In awarding custody, the court's main concern is the best interests of the children. **Id.** at 474. To that end, our statutes enumerate a list of factors that the trial court must consider in determining the children's best interests. They are as follows:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

The trial court discussed each factor in its October 7, 2014 order. The trial court found that each party encouraged and permitted frequent contact with the other party and that the parties were able to work together to modify the custody arrangement as needed. Order at 3 ¶ 14a. The trial court determined that there was no evidence of physical abuse except for the incidents leading to the PFAs. It found that both parties were capable of providing supervision for the children. *Id.* at ¶ 14b. Both parties were capable of providing proper care and performing parental duties for the children. *Id.* at ¶ 14c. The trial court found that both parties provide stability and continuity, encourage participation in the community, attend the children's activities, and have extended family in the area with which the children have a connection. *Id.* at 3-4 ¶ 14d-e. The children's half-sibling, M.N., lives with Mother full-time and the children have a relationship with her. *Id.* at 4 ¶ 14f.

The children did not testify. The trial court found that the parties were encouraging a relationship between the children and the other parent, even though the parties rarely communicated directly. *Id.* at ¶ 14h. The court determined that each parent has a loving and involved relationship with the children. *Id.* at 4-5 ¶ 14i. Further, both parties provided for the children's needs on a daily basis. *Id.* at 5 ¶ 14j. The parties lived close enough that there were no transportation issues. *Id.* at ¶ 14k. The court found that both parties were able to provide adequate child care because their work schedules accommodated the children's school schedule and that each would

have to make child care arrangements in the summer. *Id.* at 5-6 ¶ 14l. The trial court determined that the parties have cooperated with each other, and that their relationship appeared to be free of conflict, excepting the PFAs that stemmed from the ending of the parties' relationship. *Id.* at 6 ¶ 14m.

Finally, the trial court acknowledged Mother's prior alcohol abuse. The court found that Mother had completed successfully her assessment and attended treatment. The court also recognized Father's prior conviction for drug possession, but found no evidence of a continuing drug use. *Id.* at ¶ 14n. The court also found no evidence of any mental or physical condition of the parties or members of their household that would interfere with the ability to care for the children. *Id.* at 6-7 ¶ 14o.

Father contends that the evidence does not support the trial court's conclusions that Mother's alcohol abuse has not continued. However, Mother entered an evaluation and participated in the recommended treatment. She was discharged from further treatment by a licensed drug and alcohol counselor. The court cited Mother's testimony that her drinking began when M.N.'s father committed suicide and that she no longer drinks when she has custody of the children. We will not disturb the court's credibility determinations. We find no abuse of discretion in the court's crediting the testimony of Mother and a licensed counselor.

Father also argues that the court erred in finding that Mother regularly attended the children's extracurricular activities. Mother testified that she attends some, but not all, of the children's games and practices. While the

court found that the parents are both involved in the children's daily activities, the trial court recognized that Mother provided for medical and dental care while Father coached the children's teams and ran one of the leagues. Order at 5 ¶14j. The trial court's conclusions with regard to the parents' involvement with their children are supported by the record.

Father contends that there was no evidence of the children's relationship with Mother's extended family or with M.N. However, Mother testified that the children have a good relationship with her parents, her sister, and her sister's children. N.T. at 116-17. The trial court was entitled to credit that testimony. M.N. lives in the same house as the children. The trial court drew a reasonable inference from that fact that "[t]he three children certainly know this half-sister and they have a permanent relationship with her." Order at 4 ¶ 14f.

Father also asserts that Mother does not provide adequate supervision for the children. Father testified about occasions when the children were unsupervised or supervised by M.N. The trial court found that both parties were providing adequate supervision and that their work schedules accommodated the children's school schedules. The trial court did not credit Father's testimony. We will not disturb the trial court's credibility determinations as the trial court is in the best position to observe the witnesses.

Finally, Father argues that the evidence demonstrated that he is more able to provide a stable, nurturing relationship and provide for the children's

daily needs. Both parties testified about their love and involvement with the children and about how they provide for the children's needs. Father had additional witnesses to corroborate his testimony. However, just because Mother did not have corroborating witnesses does not mean the trial court could not credit Mother's testimony and find that she also was capable of providing for the children.

The trial court decided that the parties were working well together under the current arrangement and that the children were thriving. As such, the court found no reason to change the custody schedule. The trial court's findings are supported by the record. We find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2015