J-S96030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.J.V. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| R.E.V. | |
| | No. 1227 WDA 2016 |

Appeal from the Order Entered July 15, 2016
In the Court of Common Pleas of Blair County
Orphans' Court at No(s): 2015 GN 1929

BEFORE:  BENDER, P.J.E., BOWES, J., AND SOLANO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 30, 2017**

R.J.V. ("Mother") appeals from the July 15, 2016 custody order awarding R.E.V. ("Father") primary physical custody, during the school year, of their fourteen-year-old daughter K.V., and granting Mother partial custody as dictated by the terms of the court's order.  We affirm.

Mother and Father married on September 27, 2001, and K.V. was born of the marriage on April 3, 2002.  Mother and Father separated, and subsequently, agreed to a custody arrangement wherein they shared custody, rotating physical custody every four days based upon Father's work schedule.  That agreement persisted throughout the proceedings.

On July 2, 2015, Mother filed a complaint for custody requesting primary physical custody.  At that time, Mother was living in Clearfield,

Clearfield County, and traveling often to visit family in Bradford, McKean County. Father resided at the marital residence in Altoona, Blair County. An evidentiary hearing was held on July 13, 2016, wherein Mother and Father testified, and K.V. spoke with the court *in camera*. The court entered an order dated July 15, 2016, directing Mother and Father to share legal and physical custody of K.V., and awarding Father primary physical custody during the school year, with Mother receiving partial custody on alternating weekends, and one weekday evening each week. Mother filed a timely appeal and provided a contemporaneous Rule 1925(b) statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion. This matter is now ready for our review.

Mother presents two questions for our consideration:

I. Did the trial court abuse its discretion in failing to address the relocation factors in its opinion denying the relocation request of Mother?

II. Did the trial court abuse its discretion in finding that the custody factors weighed in favor of placing the child in Father's primary custody and was supported by clear and convincing evidence?

Mother's brief at 8.

We review a trial court's custody order for an abuse of discretion. *D.K.D. v. A.L.C.*, 141 A.3d 566, 571 (Pa.Super. 2016). As such, we defer to the trial court's factual findings that are supported by the record and its credibility determinations. *Id*. Nevertheless, we are not bound by the trial

court's deductions or inferences, nor are we constrained to adopt a finding that cannot be sustained with competent evidence. *Id*. Thus, this court will accept the trial court's conclusions unless it is tantamount to legal error or unreasonable in light of the factual findings. *Id*. at 571-572.

In a custody case, the primary concern is the best interests of the child. *Id*. at 572. Moreover, "the best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Id*. (citation omitted).

Mother first asserts that the trial court erred in failing to consider the relocation factors set forth in § 5337(h)[1] of the Child Custody Act in addition

---

[1] Section 5337(h) of the Child Custody Act requires the trial court to consider the following factors when a party is relocating:

(1) The nature, quality, extend of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental state, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

*(Footnote Continued Next Page)*

to the best-interest factors outlined in § 5328(a), which we address *infra*. Mother maintains that the court must address the ten factors enumerated in § 5337 in any case involving relocation and custody. She concludes that, had the court weighed those factors, the outcome would militate in favor of granting her primary physical custody of K.V.

We discern no trial court error. In awarding Father primary physical custody of K.V. during the school year, the court considered all sixteen of

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking relocation, including, but not limited to, financial and emotional benefit or educational opportunity.
>
> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.
>
> (8) The reasons and motivation of each party for seeking or opposing the relocation.
>
> (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.
>
> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

the best-interest factors pursuant to § 5328(a) of the Child Custody Act. Under subsection (a)(16), mandating an examination of any other relevant factor, the court explained, "In light of our decision herein to award the Father primary physical custody during the school year, we do not believe it necessary to specifically address the relocation factors. Further, we believe that the elements set forth in such relocation factors have been generally addressed above." Opinion, 7/18/16, at 21.

This Court considered the applicability of the ten relocation factors in *D.K. v. S.P.K.*, 102 A.3d 467 (Pa.Super. 2014). In *D.K.*, following a separation, the mother moved in with her parents in North Carolina. At that time, the father and children resided in Pittsburgh, Pennsylvania. The parties entered into a custody agreement permitting the father to maintain primary physical custody of the children in Pennsylvania, and providing the mother with periods of supervised custody in North Carolina. Approximately one year after entering into this agreement, the mother filed a complaint for custody seeking primary physical custody. The court subsequently awarded primary physical custody to the mother, and the father appealed.

On appeal, father argued, *inter alia*, that the mother failed to comply with the relocation procedures delineated in § 5337. He contended that since the children would be relocated to North Carolina, the mother was required to provide him timely notice of her intention to relocate the children. As it concerns this matter, we held that § 5337 anticipates that a

custodial parent would be relocating and that "where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered." **Id**. at 474. Hence, we concluded that, where neither party is relocating, the relocation provisions under § 5337 do not apply. **Id**. at 472. Nevertheless, we held that, in a case where a child stands to move a significant distance, the trial court should still consider the relevant factors of § 5337(h) in its § 5328(a) best interest analysis. **Id**. at 476.

Herein, Mother resided in Clearfield and Father lived in Altoona when Mother filed her complaint for custody. Thus, as in **D.K.**, *supra*, the trial court was not *per se* required to consider the relocation factors listed in § 5337(h). However, since K.V. would reside in Clearfield if Mother obtained primary physical custody, the court was bound to consider the relevant § 5337(h) factors in its best interest analysis.

We find the trial court did not err in failing to address the relocation factors specifically, but rather, confirmed that it considered the factors relevant to K.V.'s potential relocation as required by **D.K.**, *supra*. We note that there is significant overlap between the best-interest factors and the relocation factors. Instantly, the court found that both parties had performed, and were capable of performing, all parental duties. In addition, remaining in Father's care would permit K.V. to attend Bishop Guilfoyle High School where many of her friends from elementary school would also be

attending. On the other hand, if K.V. were required to reside in Clearfield, she would be enrolled in an unfamiliar school in an unfamiliar area. The court also noted that K.V. had close family relationships in Blair County and that she maintained a good relationship with Father's girlfriend. It reasoned that those individuals would be available to provide K.V.'s after school supervision. It found that similar relationships did not exist in Clearfield. Finally, the court relied upon fourteen year-old K.V.'s well-reasoned preference to remain in Father's custody during the school year.

When viewed in light of the relevant relocation factors, the trial court provided ample reasoning for why it deemed that K.V.'s best interests were met through the stable environment and educational opportunities provided by remaining in Father's care rather than moving to Clearfield to live with Mother. Hence, no relief is due.

Next, Mother contends that the trial court improperly weighed several of the best-interest factors in favor of Father. The Child Custody Act enumerates the following factors the court must consider in determining the best interest of a child when awarding any form of custody:

(1)     Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)     The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's efforts to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S. § 5328(a).

Mother's argument in this regard is multi-faceted. First, Mother argues that the court did not properly consider Father's decision to prevent K.V. from relocating to Clearfield when Mother first attempted to move with the child. She asserts that the court trivialized Father's unwillingness to put her and K.V.'s needs before his own. Mother also claims that the court did not properly consider her status as the primary caretaker. She maintains that the court failed to find that she was less fit than Father in tending to K.V.

In addition, Mother alleges that the court gave too much weight to K.V.'s expressed preference to stay with Father. She avers that, although K.V. prefers Father's style of discipline, K.V. has engaged in self-harm while under his supervision. Lastly, Mother notes that Father's work schedule requires him to secure the aid of third parties to supervise K.V., whereas she would be able to nurture the child full-time. Mother concludes that the trial court erred in failing to determine that she provided a more stable environment for K.V., and thus, that it was in K.V.'s best interests to reside with her. We address Mother's claimed errors jointly.

Herein, the trial court found that Mother and Father had demonstrated continuing contact with the other party since the inception of the custody agreement. The court noted one incident, prior to the custody agreement, where Father was prompted to remove K.V. from the marital home when Mother informed him that she was moving to Clearfield with the child. The court credited Father's explanation that he feared that Mother was taking the child permanently, and that he kept the child only until he had consulted with an attorney a few days later. The record reveals no abuse of discretion in this regard. Mother discovered K.V.'s location after Father removed her from the marital home and the parties entered into a custody arrangement shortly thereafter.

In assessing § 5328(a)(3), the trial court found that both parties were capable of performing parental duties. The court recognized Mother's comprehensive contribution to the child's development. Nevertheless, the court observed that Father had also provided care, completed chores outside the house, and volunteered for school activities when he was available. As a result, it found that both parents had carried out their parental duties and were capable of continuing to do so. Although Mother is insistent that her role as the primary caregiver should outweigh the factors relied upon by the trial court, we discern no abuse of discretion in the court weighing this factor equally between the parties.

With regards to K.V.'s preferences, the court found K.V. to be an "intelligent, thoughtful, mature, and articulate young lady." Opinion, 7/18/16, at 12. Essentially, Mother argues that K.V. wants to be with Father because he is less of a disciplinarian. The court acknowledged that Mother and Father employ differing discipline styles and noted that K.V. responded more positively to Father's methodology. However, the court reviewed K.V.'s testimony as a whole, and found numerous reasons as to K.V.'s expressed inclination toward remaining with Father. The court stated that K.V. and Father enjoy many of the same activities, that Father keeps his promises, and that K.V. enjoys a close, trusting relationship with Father's girlfriend. The court emphasized that K.V. desired to remain within the Altoona school system where she has friends and enjoys various extracurricular activities. Finally, it remarked that K.V. conveyed that she wishes to stay Catholic, the faith she shares with Father alone. In this vein, she aspires to attend the local Catholic high school. In light of K.V.'s numerous and well-articulated reasons for remaining in Father's care, we find the court did not err in weighing this factor in favor of Father.

Finally, the trial court considered each party's availability to care for the child under § 5328(a)(12). The court determined that due to K.V.'s age, this factor had little weight. Nevertheless, it noted that Father had several family members in the area who were available to care for K.V. in an emergency. On the other hand, although Mother would be available full-

time, she would be reliant on non-family members in case of an emergency. The evidence of record supports the court's determinations in this regard, and therefore, it did not abuse its discretion in finding this factor favors Father.

In summary, we conclude that the trial court did not abuse its discretion in considering the statutory factors and awarding Father primary physical custody of K.V. during the school year and granting Mother partial custody as dictated by the terms of the court's order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2017