J-S68045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.L.H. NOW S.L.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| S.E.H. | : | |
| | : | |
| Appellant | : | No. 693 WDA 2016 |

Appeal from the Order April 14, 2016
In the Court of Common Pleas of Bedford County,
Civil Division at No(s):  864 for the year 2007

BEFORE:  SHOGAN, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 20, 2016**

S.E.H. (Father) appeals from the order entered April 14, 2016, in the Court of Common Pleas of Bedford County, which reduced his periods of partial physical custody with respect to his son, P.H. (Child), born in November of 2006, and awarded increased periods of primary physical custody to Child's mother, S.L.B. (Mother).  After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Mother and Father are former spouses.  They separated less than a year after Child's birth, in July of 2007, and divorced in 2010. Currently, Mother resides with her boyfriend, J.S., and their son, H.S., who was born in May of 2014.  Mother is a stay-at-home parent, and J.S. is

_____

* Retired Senior Judge assigned to the Superior Court.

employed as a truck driver. Father lives about thirty miles away from Mother and is employed as a carpenter. He typically works during the summer months and is laid off during the winter.

Prior to the commencement of the current custody proceedings, Mother exercised primary physical custody of Child pursuant to a custody stipulation dated September 25, 2013, and entered as an order of court on October 9, 2013. The stipulation awarded both parties shared legal custody, and awarded Father partial physical custody every weekend during the school year from Friday at 7:00 p.m. until Sunday at 7:00 p.m., as well as alternating weeks during the summer. On September 17, 2014, Mother filed a petition for modification of the prior custody order, in which she requested that Father's physical custody of Child be reduced to every other weekend during both the school year and the summer. On October 22, 2014, Father filed a counter-petition for modification of custody, in which he requested primary physical custody of Child.

The trial court held a series of custody hearings on February 12, 2015, May 22, 2015, and January 15, 2016. On April 14, 2016, the court entered the order complained of on appeal, in which it reduced Father's partial physical custody of Child by providing that Mother would have custody during the second weekend of every month, and during the fifth weekend of every month should one exist. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

[1.] Did the trial court commit an abuse of discretion in awarding [] Mother primary physical custody and [] Father periods of partial custody, and in particular with respect to the following:

> a. In determining that Factor 1, which parent would best promote contact between [C]hild and other parent, did not favor either party;
>
> b. In determining Factor 2, information relating to child abuse or neglect, was insufficient to warrant a finding against either party;
>
> c. In determining Factor 3, parental duties performed, does not warrant a finding in favor of either party; and,
>
> d. In determining Factor 4, stability and continuity for [C]hild, favors [] Mother, rather than [] Father?

[2.] Did the trial court commit an abuse of discretion in awarding [] Mother primary physical custody, thereby denying [] Father's petition for modification, and indirectly the request for relocation, and in particular with respect to the following:

> a. In determining Relocation Factor 2, age, development stage and needs of the child vis-à-vis the impact of relocation, not to be in [C]hild's best interests;
>
> b. In determining Relocation Factor 6, whether relocation will enhance the child's general quality of life, does not favor either parent; and,
>
> c. In determining Relocation Factor 7, whether relocation enhances the child's general quality of life relative to financial or emotional benefit and educational opportunity, favors [] Mother[?]

Father's brief at 8-9 (suggested answers omitted).[1]

We consider Father's issues mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

_____

[1] Although this is not a relocation case, the trial court considered the relocation factors set forth at 23 Pa.C.S. § 5337(h). It is well-settled that moving a child from one party's primary physical custody to another party's primary physical custody does not qualify as "relocation" when both parties continue to reside in the same place. *D.K. v. S.P.K.*, 102 A.3d 467, 472-73 (Pa. Super. 2014). In that case, this Court held that it was not improper to consider the relocation factors where the children are required to move a significant distance. However, it was not necessary to consider these factors in this case where Child would only be relocating a distance of 30 miles. *See id* at 476-77 (holding that in "a custody case where neither parent is relocating, **but the children stand to move a significant distance**, trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interests analysis") (emphasis added). Nonetheless, it is apparent from the trial court opinion that no different decision would have been made had the relocation factors not been considered, and Father thus would not be entitled to relief. Therefore, we will not be discussing those factors *infra*.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.
> >
> > (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court issued a thorough opinion discussing each of the Section 5328(a) best interest factors and concluded that awarding primary physical custody to Father would not be in Child's best interest. The court reasoned as follows.

Both homes are fit and both parents able. However, Mother's relationship with her companion is of a longer duration. It would be painful for [Child] to form a strong bond with [] Father's companion and children if that relationship is not to last. The present schedule affords Father a maximum amount of time without the child becoming dependent emotionally on his companion and children. Moving [Child] to a new school given his current success is not a positive change for him.

Based on the above, the Court will retain the parties' arrangement with one exception; the Court will afford the Mother one weekend a month. The current school year schedule of no weekends with his Mother substantially interferes with her continuing bond with the child.

Trial Court Opinion, 4/13/2016, at 18.

On appeal, Father takes issue with several of the trial court's factual findings. According to Father, the trial court abused its discretion by failing to find that subsections 5328(a)(1), (2.1), (3), and (4) weigh in his favor.

With respect to subsection 5328(a)(1), Father argues that he has strived to encourage Child's relationship with Mother. Father's brief at 17-19. In contrast, Father continues, Mother does not make an effort to encourage Child's relationship with Father, and in fact makes it difficult for Father to communicate with Child during Mother's custody time by changing her phone number and refusing to answer his phone calls. *Id.*

The trial court found as follows with respect to Section 5328(a)(1).

In the [trial c]ourt's 2009 Memorandum it was noted "both parties deeply love [C]hild, but they are unwilling to support the role of the other parent in [C]hild's life." In part to address this and other problems involving cooperation the [trial c]ourt directed the parties to work with a mediator in May of 2015. [Mother], in her testimony, stated that while she gave [] Father extra time with the child, [] Father was reluctant to modify the schedule to afford her more time. However, it must be kept in

mind [] Mother's current proposal is to reduce [] Father's time by one weekend a month during the school year and desires to change the summer schedule from the weekly alternating schedule to weekends only plus vacation time. An analysis of these factors must also consider how the October 2, 2013, custody order came about. On July 4, 2013, [Mother] was arrested for driving while under the influence, highest rate, a misdemeanor, and endangering the welfare of children, a misdemeanor of the first degree. [Mother] was involved in an accident while transporting the child. [Mother] stated that she had been at a campsite with family members and left to pick up the child at a custody exchange. While returning to the campsite, she lost control of the car when it skidded on loose gravel, and [Mother] struck the guiderail. [C]hild was seat belted in a booster seat and was not harmed. On July 22, 2014 she pled guilty to DUI incapable of safe driving, and recklessly endangering another person. [Mother] was sentenced to not less than 10 days in jail to a maximum of five months. This was followed by 13 months [of] probation. When the arrest occurred [Father] agreed to allow [Mother] to retain primary custody. As he stated in his testimony on May 22, 2014, [*sic*] [Father] made the agreement allowing [Mother] to retain primary custody even though he believed [Mother] was unsafe with the child. However, he noted, "I got all the quality time and no support". He further stated he didn't want the child to "lose" his Mother, however, he also told [Mother] if she filed for support, he would file for primary custody. Paragraph nine of the order of September 25, 2013 provided neither party was to pay support. In October of 2014 [Mother] re-raised her claim for support against [Father]. As noted, in September of 2014 [Mother] filed to modify custody and in October of 2014 [Father] counter petitioned seeking primary custody. Based on the above it does not appear the parties have advanced much beyond their position as noted in the [trial c]ourt's Memorandum of 2009. Both parties are aware that [C]hild has a strong bond with the other parent, but both are extremely jealous of [C]hild's time and each wants to have the lion's share of [C]hild's free time.

Trial Court Opinion, 4/13/2016, at 4-5 (citation omitted).

After carefully examining the record in this matter, we conclude that the trial court did not abuse its discretion. Father testified during the

custody proceedings that Mother recently "blocked" his cell phone, and that he is only permitted to call and speak to Child using his landline. N.T., 5/22/2015, at 11, 20, 27-28. Father reported that Mother blocked him because "she claims that I write rough messages to her." *Id.* at 27. On cross-examination, counsel for Mother asked Father if he has insulted Mother by sending her text messages describing her as "Blondie" or "a dumb blonde." *Id.* at 68-69. Father admitted, "I have called her a blonde before," but suggested that this statement was not necessarily meant as an insult. *Id.* at 69. At the conclusion of the testimony on that day, the trial court ordered that Father would be permitted to call and speak to Child using his cell phone. *Id.* at 87. However, the court prohibited Father from sending Mother text messages.[2] *Id.*

Thus, it is clear that the trial court considered Mother's refusal to accept calls from Father's cell phone when issuing the order complained of on appeal, and that the trial court found Mother's behavior unacceptable. However, the record indicates that Father contributed to, if not caused, these communication difficulties by making derogatory comments to Mother. The court was well within its discretion when it concluded that neither parent is adept at encouraging the other parent's relationship with Child, and that subsection 5328(a)(1) should not weigh in Father's favor.

---

[2] The trial court did not include a provision prohibiting text messages in its final custody order.

Father next argues that the trial court abused its discretion by finding that subsection 5328(a)(2.1) did not weigh in favor of either party. Father's brief at 19-20. Father contends that Mother has engaged in "reckless decision making vis-à-vis the child's interests, safety and welfare," as demonstrated by an incident during which Mother drove while intoxicated with Child in her vehicle, and was involved in an accident. *Id.*

The trial court made the following findings.

[Mother's] DUI arrest based on an accident with the child in the car raises concerns the Court believed [Mother] previously resolved. In 2007 at about the time of the separation [Mother] had a DUI arrest. In the June, 2009 Memorandum in referring to the arrest, the [trial c]ourt stated, "However, it appears that [Mother] has dealt with this issue responsibly since her arrest for driving under the influence in September of 2007." [T]he Memorandum goes on to say … "Further it appears [Father] does not believe [Mother] represents a risk to [C]hild as he is satisfied that he and [Mother] share legal custody and [Mother] have physical custody fifty (50%) percent of the time." Based on present events it appears the [trial c]ourt was overly optimistic about the state of [Mother's] recovery and how perspicacious [Father's] [*sic*] judgment is regarding the safety of her son. On the positive side, [Mother] has completed all of the programs required by her conviction, and it does not appear there were any alcohol related problems between 2007 and 2013. The issue was not raised in the 2012 hearings. [Mother] is not in counseling for alcoholism. The evaluation she took as part of the DWUI process did not require counseling. [Mother] did attend monthly alcohol anonymous meetings for four months. Further, [Mother] says she stopped drinking after her arrest in July of 2013. It should be noted the blood test of [Mother's] alcohol level at the time of her arrest was a .16, which of course is considered a high rate. Based on the record it appears [Mother] understands the problem she has with alcohol except when she is drinking. A .16 shows a fairly high tolerance to alcohol and would support [] Mother drinks more than has been disclosed in previous [c]ourt proceedings. It would thus appear to be

necessary to add a condition to the order that the Mother not consume alcohol while exercising custody, and to enforce this provision strictly.

***

Except for the concern about the Mother's drinking, no credible evidence was presented by either side concerning abuse or neglect of the child.

Trial Court Opinion, 4/13/2016, at 6-7 (citation omitted).

Father's claim fails, as it is clear that the trial court did weigh subsection 5328(a)(2.1) in his favor. While the court did not state explicitly that subsection 5328(a)(2.1) "weighs in favor" of Father, the trial court concluded that the only evidence relevant to this factor was that Mother drove drunk with Child in the car. Nonetheless, the trial court was not obligated to award primary physical custody to Father based solely on this factor. The trial court acted within its discretion by concluding that this factor is outweighed by the other evidence presented in this case, including Child's success in his current school and his need for stability.

With respect to subsection 5328(a)(3), Father argues that the trial court failed to weigh appropriately the significant parental duties that he performs for Child. Father's brief at 20-21. Father emphasizes that he makes financial contributions for Child's benefit, and that he is involved in Child's extracurricular activities. ***Id.***

The trial court made the following findings with respect to subsection 5328(a)(3).

- 11 -

> [C]hild has always resided primarily with his Mother. The [trial c]ourt has previously found her to be [C]hild's primary caregiver. Such a finding can be a substantial factor in custody cases especially where the child is younger. The [trial c]ourt has also previously found that regarding difficult issues involving [C]hild [] Mother's parental practices have been "…the most consistent, balanced, and realistic." Having said that, since the parties modified the order in 2013 to give [] Father every weekend, and week on week off in the summer, he has performed all parental duties required by his substantial periods of custody. Further, [Father] has been extremely consistent in exercising periods of custody. [C]hild participates in soccer and basketball and [] Father is active and supports the child at his games. Further, [] Father has enrolled [Child] in wrestling and is active with [him] in that pursuit. [] Father does his own housework and when his present companion isn't in his home he does all the cooking. [] Father also plays board games with his son, and roller skating, and [Child] enjoys doing chores where he can work with Father. It appears [] Mother is responsible for [C]hild's dental and doctor visits. Both parents are involved with [C]hild's school and both meet with his teacher.

Trial Court Opinion, 4/13/2016, at 7-8 (citations omitted).

Thus, the trial court acknowledged that Father has performed significant parental duties for Child during his periods of partial physical custody. However, given that Mother has remained Child's primary physical custodian throughout his life, the record supports the court's finding that this factor should not weigh in favor of Father. Notably, the record reveals that Mother also has been active in Child's extracurricular activities. Mother takes Child to practices and attends his games. N.T., 5/22/2015, at 23-24, 26; N.T. 1/15/2016, at 65-67. Father's insistence on appeal that Mother somehow neglects these activities is belied by the record.

With respect to subsection 5328(a)(4), Father argues that he is more stable than Mother because he has lived in the same home since Child was

born, while Mother has changed residences several times. Father's brief at 21-23. Father also stresses that Mother's current home is owned by her boyfriend, and that Mother could be forced to leave the home at her boyfriend's discretion. *Id.*

The trial court found as follows with respect to subsection 5328(a)(4).

[] Mother has been with her present companion for two years, has resided in the Everett area continuously since 2008, and [Mother's] present house is appropriate. However, she does rely on her companion for support as she works full time in the home, and the house does belong to her companion. As noted, the couple shares a child together and although the companion stated that while he and [Mother] have no current plans to formalize their relationship, they have never separated and are serious about their relationship.

[] Father continues to reside in the former marital residence and that has been his home since the house was built in 2004. [] Father has also maintained his employment as a Union Carpenter for many years. [Father's] house is very adequate. [Father's] relationship with his present companion is stable and positive but only began in August of 2015.

Based on the above the record supports that overall the Mother's home is more stable.

Trial Court Opinion, 4/13/2016, at 8-9.

We again conclude that the trial court did not abuse its discretion. During the custody proceedings, J.S. testified that he and Mother have not separated at any point over the last three years, and that he anticipates that their relationship will continue indefinitely. N.T., 1/15/2016, at 40, 48-49. J.S. stated that he and Mother have discussed marriage, but that they have no plans to get married within the next year. *Id.* at 48.

- 13 -

On May 22, 2015, Father testified that, until recently, he had a girlfriend named M.S., and that M.S. "[o]ccasionally" resided with him at his home. N.T., 5/22/2015, at 6. Father stated that M.S. no longer spends significant periods of time at his home, because "she just went through a lot of situations recently and we're just working on things." *Id.* By January 15, 2016, Father was no longer seeing M.S. at all, and instead presented the testimony of his new girlfriend, K.R. K.R. testified that she has known Father for about five months, and that she and one or more of her daughters have been spending the weekends at Father's home. N.T., 1/15/2016, at 59-60.

Accordingly, the record supports the trial court's finding that Mother's home is currently more stable than Father's home. Father's home life has been disrupted by a series of fluctuating relationships, while Mother's home life has remained unchanged for the last three years. Critically, there was no evidence presented during the custody proceedings which would suggest that Mother's relationship with J.S. is likely to end, or that J.S. will remove Mother from his home. Father's suggestion that Mother's relationship with J.S. may be unstable is mere speculation, and does not warrant reversal of the subject custody order.

Father has failed to demonstrate that awarding him with primary physical custody will enhance Child's quality of life. Child has excelled while in Mother's care, and it was proper for the trial court to conclude that it should not attempt to fix what is not broken by uprooting Child and placing

him with Father. An award of primary physical custody to Father would cause considerable upheaval in Child's life, and could jeopardize his ongoing success.

Accordingly, because none of Father's claims entitles him to relief, we affirm the order of the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/20/2016