J-A01045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.L.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| K.A.R., NOW K.A.H. | |
| Appellee | No. 1401 WDA 2016 |

Appeal from the Order entered August 17, 2016
in the Court of Common Pleas of Indiana County,
Civil Division, at No(s): 10161 CD 2012

BEFORE:  BOWES, OLSON, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED MARCH 30, 2017**

J.L.W. (Father) appeals from the order entered August 17 2016, in the Indiana County Court of Common Pleas, which granted primary physical custody of Father's minor daughter, A.W. (Child), to her biological mother, K.A.R., now K.A.H. (Mother).  We affirm.

The parties began dating in 2009, and Child was born in March of 2011.  Father and Mother were never married, and although Father frequented Mother's residence, they did not cohabitate.  Several months after Child's birth, in January 2012, the parties separated.

> The custody case was initiated by Father filing a *pro se* custody complaint on January 25, 2012.  Father's complaint averred that Mother denied him access to [Child] and [Mother] was not permitting him to share in decision making.  He also simultaneously filed a petition for emergency custody claiming that Mother restricted his contact with [Child].  His request for

---
* Retired Senior Judge specially assigned to the Superior Court.

emergency relief was denied by President Judge William J. Martin.

The case proceeded to an initial custody conference and an agreement for a temporary order was reached at that proceeding. This agreement awarded shared legal custody to the parties and primary physical custody to Mother. Father was granted partial physical custody every Saturday from 9:00 a.m. until 5:00 p.m.

A mediation conference took place on May 21, 2012. As a result of the mediation conference an agreement was reached. The provision for shared legal custody was continued, as was Mother's grant of primary physical custody. Father's partial custody was gradually increased according to a schedule. For the first thirty days [Father] had partial physical custody every Saturday from 9:00 a.m. until 6:00 p.m. He also had every Thursday after work until 7:00 p.m. and if he was not working[,] a full day. Thereafter, for five weeks he had every other weekend from Saturday at 9:00 a.m. until Sunday at 6:00 p.m. and every Thursday until 7:00 p.m. (although a full day if not working). Then following this phase, he was granted every other weekend from Fridays at 6:00 p.m. through Sundays at 10:00 p.m. (although earlier on Fridays if he was not working) and every Thursday from after work until 9:00 p.m.

Approximately two weeks after this order was entered, Mother filed a special relief action based on an incident which she claimed occurred on May 31, 2012. According to Mother's petition, [Child] sustained a fracture to her tibia. On June 15, 2012, President Judge William J. Martin, awarded Mother primary physical custody and restricted Father's contact with [Child] to liberal supervised visitation. A special relief hearing occurred before t[he trial c]ourt on June 27, 2012[.] As a result of this proceeding, the petition for special relief was dismissed because there was no evidence that Father intentionally or negligently caused [Child's] injury and President Judge William J. Martin's order restricting Father's contact with [Child] was vacated. By agreement, the exchange location near Father's residence was changed to a site that had video surveillance.

On November 13, 2012, Father filed a petition for modification stating that the custodial circumstances had changed, that Mother would not agree to additional periods of

custody for Father, that the current court order did not specify holidays and that Father sought shared physical custody. Mediation occurred on February 13, 2013 and was unsuccessful. Both parties [] also attended the Children in the Middle class.

A custody trial was held on November 26, 2013 and January 13, 2014, before Judge Carol Hanna. At the conclusion of that trial, Judge Hanna ordered that the parents split custody of [Child] 50/50 on a week on/week off custody schedule, beginning in June 2014. The parties were also ordered to share holidays, participate in co-parenting counseling and utilize the Our Family Wizard program.

The shared physical custody schedule was utilized by the parties until early 2016, when the parties both filed for primary custody of [Child]. The foremost issue for the parties is [Child's] upcoming enrollment in kindergarten. Father wishes to enroll [Child] in Kiski Area School District, specifically North Primary. Conversely, Mother requests that she be granted primary custody and leave to enroll [Child] in the Indiana School District, [specifically] East Pike Elementary. The parties were unable to agree on a custody arrangement and requested a hearing. A custody trial was held on August 2, 3, 4, 2016.

Trial Court Opinion, 8/17/2016, at 1-5 (unnecessary capitalization omitted).

Following the custody trial, the trial court issued an opinion and order, granting Mother primary physical custody, with partial custody to Father. *See* Opinion and Order, 8/17/2016. The parties were to continue jointly sharing legal custody of Child.

On September 14, 2016, Father filed a notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[1]

Father now raises the following issue for our review.

---

[1] In response to Father's concise statement, the trial court submitted a letter stating it believed that its August 17, 2016 opinion following the parties' custody trial sufficiently addressed all the issues raised by Father and thus, the court would rely on that opinion for the purposes of this appeal.

1. Whether the trial court committed an abuse of discretion and error of law by rendering a decision that awarded primary custody of Child to Mother where such decision was against the weight of the evidence presented at trial with respect to the custody factors set forth in 23 Pa.C.S.[] §5328(a) and is contrary to the best interests of Child.

Father's Brief at 9 (suggested answer and unnecessary capitalization omitted).

We address Father's claims mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, **with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.** However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted; emphasis added).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all

-4 -

relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court concluded that the majority of the subsection 5328(a) factors either did not apply to the present case, or did not weigh in favor of either party. Trial Court Opinion, 8/16/2016, at 5-16. The court found only two factors favored one parent over the other, and both favored Mother. Specifically, the trial court observed that subsection 5328(a)(5) weighed in favor of Mother, due to the close interactions and proximity of Child's extended family. *Id.* at 10. The court also observed that subsection 5328(a)(6) weighed in favor of Mother, as a result of Child's relationship with her three step-siblings.[2] *Id.* 10-11. The trial court acknowledged that both parents love Child, and that shared physical custody was in the best interest of Child. *Id.* 17-18. However, because Child is entering kindergarten and the parties live in two different school districts, continued

---

[2] Mother is currently married to D.H. (Stepfather). Stepfather has three children from a prior relationship. Father has primary custody of his eldest child, and partial custody of his two younger children every other weekend.

50/50 custody was no longer feasible.[3]  *Id.*  Confessing that "this was a difficult decision for the [trial court,] as both parents are fit and love the child immensely[,]" the court ultimately granted Mother primary custody. *Id.* at 17.  The court reasoned that Child's "step-sibling relationships and the extended family available at Mother's residence will provide [Child] with a further well-rounded childhood." *Id.*

On appeal, Father contends the trial court's decision was against the weight of the evidence for the following reasons: (1) the court's finding that subsection 5328(a)(5) favored Mother is "completely inconsistent with the testimony and evidence submitted during the custody trial[;]" (2) the court incorrectly found subsection 5328(a)(6) favored Mother and misconstrued the relationship Child has with her step-siblings; (3) the trial court incorrectly found that subsections 5328(a)(1), (10), and (13) were neutral, and should have found them to favor Father, and (4) the trial court incorrectly found that no evidence was presented as to subsection 5328(a)(16), any other relevant factor.  Father's Brief at 16-29.

We address each of these arguments sequentially.  First, Father claims the court incorrectly assigned subsection 5328(a)(5) in favor of Mother. Father contends both parties have family that live in close proximity to their homes, and argues that the trial court's analysis focused "more on the proximity of the relative's home to each parent, than the availability of the

---

[3] Apparently, because the distances between the parties' residences and the schools was too great, neither party argued for continuing the week on/week off arrangement.

relative." Father's Brief at 20. Father claims the court's findings concerning the proximity of his family to his residence were not supported by the testimony heard at trial. *Id.* Specifically, Father avers the trial court made conclusions regarding where his extended family lived, when there was no testimony to confirm that they lived "approximately 20 minutes away" and outside Father's school district. *Id.*

Upon review, we first note that the trial court acknowledged that this factor only **slightly** favored Mother "because of the close proximity to her extended family". Trial Court Opinion, 8/17/2016, at 10. Indeed, there was testimony that Mother's family lives in the same area as Mother, they frequently gathered for family dinners, and maternal grandparents would be the primary caregivers for Child after school and while Mother is at work. N.T., 8/3/2016, at 142-146, 158-159, 166-167. In regard to Father and his family, testimony revealed that Father lives in Hyde Park, his sister and her family live in Lower Burrell and his mother lives in Tarentum. N.T., 8/2/2016, at 33, 46, 56. For childcare purposes, Father would primarily rely on paternal grandmother or a close family friend. *Id.* at 102.

Considering our standard of review and the great deference it affords to the trial court, we find no error in the court's conclusion. In doing so, we find Father takes a very narrow interpretation of the trial court's analysis. While the court ultimately stated that the factor slightly favored Mother because of the close "proximity" of Mother's family, the preceding paragraph spoke at length about the availability of maternal grandparents for Child

after school and the amount of time Mother and Child spend with her extended family. Furthermore, the trial court was clearly aware that both parties have supportive families, stating that "both parents maintain close and beneficial relationships between [Child] and the extended family." Trial Court Opinion, 8/17/2016, at 10. Because we find the court's conclusions were supported by the record, no relief is due.

Next, Father argues the trial court misconstrued the relationship Child has with her step-siblings. Specifically, Father argues that

> [w]hile it is true that Mother has three step-children, the trial court did not consider that the relationship between Child and the two younger step-siblings would be maintained by ensuring that Mother was awarded custody of Child on the same alternating weekends as Step-Father's custodial weekends with the younger step-siblings. The trial court also did not consider the significant age difference between Child and the step-sibling residing with Mother and the short duration that she resided with Child prior to trial; therefore, the step-sibling relationship does not weigh this [f]actor in favor of Mother.

Father's Brief at 22-23.

In finding this factor favored Mother, the trial court stated that "Mother, Step-Father, and [Step-Father's oldest daughter M.] all testified to the strong bond [Child] shares with her step-siblings. The [trial court] believes [Child's] relationship and bond with her step-siblings is a positive factor in her young life and should be encouraged." Trial Court Opinion, 8/17/2016, at 10. Indeed, Mother, Father, and M. all testified that Child is close to and has a good relationship with her step-siblings. N.T., 8/3/2016, at 155-156; N.T., 8/4/2016, at 71-73, 142-143.

Despite Father's protestations concerning the limited time some of Child's step-siblings are at Mother's home and the age disparity between the eldest step-sibling and Child, the trial court, presiding over the trial and reviewing all the testimony and evidence, found Child's relationship with her step-siblings was beneficial, and therefore, this factor favored Mother. The testimony supports this finding. Thus, we find no error in the court's conclusion.

We next examine Father's contention that some factors[4] the trial court determined to be neutral should have been found to favor Father. As with the above arguments, Father takes issues with several details he contends were overlooked or not weighed heavily in his favor. These include: (1) Mother withheld custody of Child from Father for a ten week period, which the trial court found she downplayed at trial; (2) Father had to get a court order to obtain Mother's compliance for Child to attend therapy, and Father testified that unlike Mother, who relies on maternal grandparents, Father will take off work to take Child to appointments; and (3) Mother's behavior has escalated the level of conflict. Father's Brief at 16-19, 24-26.

In its opinion the trial court acknowledged the majority of these concerns but found that they did not warrant weighing the factor in favor of

---

[4] Specifically, Father argues subsections 5328(a)(1), which party is more likely to encourage and permit contact between child and other party, (10), which party is more likely to attend to the daily needs of the child, and (13) the level of conflict between the parties, which the trial court found to be neutral factors, should have weighed in favor of Father.

Father. In support of its decision, the trial court found: (1) Mother's withholding of custody occurred once in 2012, and since then she has been compliant with the custody schedule; (2) "[b]oth parties attend to [C]hild's daily physical, emotional, developmental, educational needs during their respective custody period[,]" and "despite the contentiousness between her parents, [Child] is exceedingly well-adjusted and intelligent for her age[,]" and (3) the core issue in this case is the high level of conflict between the parties. Although in his brief Father seeks to place the majority of the blame for this conflict on Mother's conduct, the trial court believed Mother's explanations for various issues that have arisen over the years, while at the same time noting that Father has added to the contentious relationship the parties have, and some of Mother's concerns about Father have been "somewhat reinforced" by the parties' co-parenting counselor. Trial Court Opinion, 5-6, 12-13, 14-15.

Father criticizes the trial court for acknowledging, yet discounting, the issues he raised. Father's argument essentially amounts to a request that this Court reweigh the evidence in favor of him, which our case law expressly prohibits. *See D.K. v. S.P.K.,* 102 A.3d 467, 478 (Pa. Super. 2014) (quoting *J.R.M. v. J.E.A.,* 33 A.3d 647, 650 (Pa. Super. 2011)) ("[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Furthermore, our review of the record reveals the court

-11-

adequately considered those issues, and set forth its reasoning for finding the factors neutral.[5]

Additionally, Father argues the trial court erred in concluding that no testimony was given as to factor 16, "any other relevant factor." Specifically, Father asserts there was pertinent testimony heard regarding the available schools in each parties' district. Father's Brief at 27. Father avers the court's opinion fails to reference this testimony. Father also argues the trial court erred by failing to "consider the fact that Step-Father and the mother of Step-Father's children admitted repeatedly to lying in the custody proceedings involving their mutual children to obtain a tactical advantage." *Id.*

With regards to schooling, Father argues

[i]f Child were to live with Father, she would attend North Primary Elementary school located approximately two (2) miles from his home in the Kiski Area School District. North Primary Elementary is ranked 98 out of 1470 elementary schools. North Primary Elementary is a Title I award school, a designation it received because it is in the highest 5% of Title I schools based upon mathematical and reading proficiency on PSSA. If Child were to primarily reside with Mother, Child would attend East Pike Elementary school in the Indiana School District. East Pike Elementary is ranked 570 out of 1470 elementary schools and is not a Title award school. [C]hild's educational opportunities and the parent who was considering [C]hild's best interests in making a school choice are important factors that the trial court failed to consider or analyze, despite ample evidence of record.

---

[5] We acknowledge that the trial court's opinion is devoid of any reference concerning Father's testimony that he had to obtain a court order for Child to attend therapy due to Mother's non-compliance. N.T., 8/2/2016, at 79-82. However, the record does reveal Child is currently in therapy, has been for over a year, and is doing well. N.T., 8/3/2016, at 3, 12-13.

> This failure constitutes an abuse of discretion. More importantly, the evidence supported a finding that [C]hild's educational needs would be more amply met by allowing Father to make the school choice of the Kiski Area School District.

Father's Brief at 27-28. Mother acknowledges that North Primary has a designation as a Title I Reward school program, whereas East Pike is designated as a Title I school without the reward distinction. Mother's Brief at 16-17. The apparent difference between the two designations focuses on test scores, in which North Primary placed within the top 5% of Title I schools. In response, Mother cites testimony from the East Pike Elementary principal, who spoke extensively about the district, school, and programs available. *Id.* Further, the principal testified that while East Pike is not currently designated as a reward school, it has been in the past. N.T., 8/2/2016, at 148-149.

Here, although the trial court did not detail the testimony heard concerning the two schools, it did acknowledge in its opinion that the parties live in two different school districts. Trial Court Opinion, 8/16/2016, at 4-5, 9-10. Notably, the trial court recognized the significance of Child's enrollment in kindergarten, referring to it as the "foremost issue." *See Id.* at 4-5 ("The foremost issue for the parties is [Child's] upcoming enrollment in kindergarten. Father wishes to enroll [Child] in Kiski Area School District, specifically North Primary. Conversely, Mother requests that she be granted primary custody and leave to enroll [Child] in the Indiana School District, [specifically] East Pike Elementary."). Additionally, the court addressed the

Child's educational needs, finding that Child was enrolled in pre-school at both parties' homes, and that both Father and Mother were meeting Child's needs.

Upon review of record, we disagree with Father that the trial court's failure to address explicitly the distinctions between East Pike and North Primary elementary schools amounted to an abuse of discretion. The record clearly indicates that the trial court heard ample testimony concerning **both** schools. Supplied with this information, the court nonetheless found that the needs of the Child would be met in either home.[6] No relief is due.

Lastly, Father takes issue with the trial court's failure to discuss the testimony heard at trial regarding Step-Father's custody proceedings concerning his three minor children from a previous relationship. Father's Brief at 28-29. By way of further background, Step-Father testified that during these proceedings with his former partner C.C., C.C. lodged false allegations against him, claiming he was a drug user. N.T., 8/4/2016, 62-63. This was confirmed by C.C., who testified that she had lied to receive a favorable outcome in custody proceedings. *Id.* at 104-107. Eventually, the parties filed a consent order, which Step-Father signed, that contained a statement that Step-Father had gone to rehab to treat his drug addiction.

---

[6] We note with displeasure the increased incidence of claims that a trial court erred based upon minor and insignificant differences between schools that are, on the whole, of roughly the same caliber. Where both prospective schools would adequately serve the needs of the child, neither the trial court nor this Court need mire itself in the minutia of trivial distinctions.

*Id.* at 87-89. Step-Father testified that he signed the order even though he had never gone to rehab "to protect [him] from any future allegations [C.C.] would make." *Id.* at 87.

In this case, Father avers "the trial court did not consider Step-Father's propensity for lying or his character, and the impact [of Child's] exposure to such behavior. This constitutes an abuse of discretion as [Step-Father] is a member of Mother's household and would be assuming some of the duties with respect to caring for Child during the school year including getting her ready for school." Father's Brief at 29.

We begin by noting our disapproval of Step-Father's lack of candor during these prior custody proceedings. Additionally, we agree with Father that Step-Father's conduct is a factor that weighs against Mother. Nonetheless, based on the trial court's ultimate conclusions, the court's failure to weigh this incident in favor of Father would not have changed the outcome, and thus no reversible err can be found.[7]

The trial court acknowledged the fact that the Child was best served in an equally shared custody arrangement. However, as is often the case when the court is presented with two competent, loving parents, who live in two different school districts, the trial court must make minor distinctions between the parties in order to determine where a child will live primarily once the child reaches school age. As is the case here, the trial court

---

[7] Furthermore, while we in no way condone Step-Father's action, this single instance cannot be called "propensity."

determined that both parties provided Child with a good home, finding that this "was a difficult decision for the [trial c]ourt as both parents are fit and love the child immensely." Trial Court Opinion, 8/17/2016 at 17. For the foregoing reasons, because we find no abuse of discretion and conclude that none of Father's claims entitles him to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2017