J-A09002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.J.F. N/K/A B.J.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.P.F. | |
| Appellee | No. 1543 MDA 2016 |

Appeal from the Order Entered August 19, 2016
In the Court of Common Pleas of York County
Civil Division at No(s): 2013-FC-000212-03

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED MAY 31, 2017**

B.J.F. n/k/a B.J.S. ("Mother") appeals from the order entered August 19, 2016, in the Court of Common Pleas of York County, which denied her petition for modification of custody order, and maintained primary physical custody of her minor son, D.F. ("Child"), with J.P.F. ("Father") during the school year.  After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Child was born in June 2004, during the marriage of Mother and Father.  Mother and Father separated in December 2012.  Joint Stipulation of Fact, 8/12/2013, at 1 (unnumbered pages).  Following her separation from Father, Mother commenced the underlying custody proceedings by filing a complaint in custody on March 21, 2013.  Currently, Mother resides in Lancaster County, Pennsylvania, with her new husband

and their one-year-old son, while Father resides approximately fifty-two miles away in York County, Pennsylvania, with his girlfriend. N.T, 8/11/2016, at 6, 8, 15; Trial Court Opinion, 10/2/2015, at 9. The parties are subject to a final custody order, entered October 2, 2015, which awards shared legal custody. The order further awards Father primary physical custody of Child during the school year, and awards Mother partial physical custody. Specifically, the order awards Mother physical custody of Child on the first, second, and fourth weekends of every month, from Friday after school until Sunday at 7:00 p.m. The parties exercise shared physical custody on an alternating week basis during the summer.[1,2]

_____

[1] The provision in the October 2, 2015 custody order describing the parties' summer custody schedule appears to be incomplete. The provision provides, in its entirety, as follows.

**SUMMER SCHEDULE:**

Mother shall have custody the first Sunday after school concludes for the year at 7:00 p.m. Mother shall continue to have custody through the following Tuesday at 7:00 p.m. Father shall have from Tuesday at 7:00 p.m. through Sunday at 7:00 p.m. Father shall be entitled to two non-consecutive weeks of custody during the summer with thirty (30) days advance written notice to Mother. Either party may sign the child up for summer camp which will be during their week of custody recognizing that the camp during Father's week may overlap a few of Mother's days.

During the summer, if Father needs daycare for more than four (4) consecutive hours on any given day, he shall first offer Mother the time with the child. If Mother elects to exercise the time, she shall provide transportation to and from the Father's residence.

*(Footnote Continued Next Page)*

- 2 -

On May 6, 2016, Mother filed a petition for modification of custody order. In her petition, Mother averred that she should be awarded primary physical custody of Child during the school year due to, among other things, Child's well-reasoned preference to live primarily with her. Petition for Modification of Custody Order, 5/6/2016, at ¶ 5. According to the trial court, the parties agreed during a pre-trial conference that Child's preference was the only circumstance that changed since the entry of the October 2, 2015 order. Trial Court Opinion, 8/19/2016, at 3. Thus, the parties agreed that the court should interview Child, but would not need to hear the testimony of any other witnesses. *Id.* The court interviewed Child on August 11, 2016. On August 19, 2016, the court entered an order denying Mother's petition, and maintaining primary physical custody of Child during the school

---

*(Footnote Continued)* ————————

Order, 10/2/2015, at 3 (unnumbered pages). However, the record reveals that the parents exercised an alternating week summer custody schedule prior to the entry of the October 2, 2015 order, and continued to exercise an alternating week schedule following the entry of the order. *See, e.g.,* Interim Order for Custody, Pending Trial, 6/10/2016, at 4 ("[T]he parents share physical custody on alternate weeks during the summer."). Child reported that in the summer he spends "seven days with my mom and five with my dad." N.T., 8/11/2016, at 7.

[2] Mother appealed the October 2, 2015 order, which a panel of this Court affirmed on April 18, 2016. *See B.J.F. v. J.P.F.*, 145 A.3d 785 (Pa. Super. 2016) (unpublished memorandum).

year with Father.[3]   Mother timely filed a notice of appeal on September 16,

2016, along with a concise statement of errors complained of on appeal.

Mother now raises the following issues for our review.

I. Did the Trial Court err in that it did not give adequate consideration to the specifically[-]stated and well[-]reasoned preference of the child to live primarily with Mother during the school year and to change school districts, as the court abused its discretion in determining that Father should maintain primary custody of the child during the school year and that the child should not change schools?

II. Did the Trial Court err in that it did not give adequate consideration to the specifically[-]stated and well[-]reasoned preference of the twelve[-]year[-]old child to live primarily with Mother during the school year and to change school districts, by basing its opinion on the Court's misunderstanding that the child was only eleven [] years old?

III. Did the Trial Court err in that it did not give adequate consideration to and properly incorporate the findings contained in the Trial Court's October 2, 2015 Opinion together with the specifically[-]stated well[-]reasoned preference of the child to live primarily with Mother during the school year and to change school districts?

IV. Did the Trial Court err in that its conclusions are unreasonable and an abuse of discretion as shown by the evidence of record, specifically the Court's conclusions with regard to the stated, well[-]reasoned preference of the twelve[-]year[-]old child to live primarily with Mother during the school year and to change school districts?

---

[3]  Father filed an answer and counterclaim to Mother's petition for modification of custody order on June 2, 2016, in which he requested that the trial court award him counsel fees.  The court denied Father's request for counsel fees in its August 19, 2016 order.  Father does not attempt to challenge this decision on appeal.

Mother's brief at 17-18 (suggested answers omitted).

We consider these issues mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide

adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Mother's claims on appeal are interrelated, so we address them together. Mother argues that Child presented a well-reasoned preference to live primarily with her during the school year and to change school districts. Mother's brief at 29-42. Mother contends that the trial court erred by failing to give adequate weight to Child's preference, and by maintaining primary physical custody with Father. *Id.* Mother contends that since both her household and Father's household are equally suitable, Child's preference should tip the scales in her favor. *Id.* at 35. Mother suggests that allowing Child to live primarily with her would result in Child spending more time with both parents, and more time with his half-brother. *Id.* at 30-31, 34. Mother also suggests that the court failed to give sufficient weight to Child's preference because the court believed that Child is eleven years old, when in reality Child is twelve years old. *Id.* at 32-33.

In order to understand the trial court's decision to deny Mother's May 6, 2016 petition for modification of custody order, we first must discuss the court's decision to maintain primary physical custody with Father in its prior custody order entered October 2, 2015. In its opinion accompanying that

order, the court discussed each of the Section 5328(a) factors. The court found that Sections 5328(a)(1), (3), (4), (9), and (11) weighed in favor of Father, while Section 5328(a)(6) weighed in favor of Mother. Trial Court Opinion, 10/2/2015, at 6-10. The court found that the remaining factors did not weigh in favor of either party. *Id.* The court concluded that Mother failed to prove that awarding her with primary physical custody during the school year would be in Child's best interest. *Id.* at 10. The court emphasized that Child was doing well under the parties' current custody arrangement, and expressed concern that an award of primary physical custody to Mother would result in Child having to leave his current school and community. *Id.* at 10-11. The court explained that while it was confident that Child could adapt to such a change, "it would not be ideal for him."[4] *Id.* at 11.

In its opinion accompanying the order entered August 19, 2016, the trial court incorporated its previous findings with respect to the Section

---

[4] The trial court also discussed the ten relocation factors listed at 23 Pa.C.S.A. § 5337(h). As we discussed in our memorandum affirming the October 2, 2015 custody order, "where neither parent is relocating, and only the custodial rights of the parties are at issue, section 5337 of the Child Custody Act is not *per se* triggered." *D.K. v. S.P.K.*, 102 A.3d 467, 474 (Pa. Super. 2014). However, where "the children stand to move a significant distance, trial courts should still consider the relevant factors of section 5337(h) in their section 5328(a) best interests analysis." *Id.* at 476. The court's analysis of the Section 5337(h) factors was substantively identical to its analysis of the Section 5328(a) factors, and focused on Child's need for stability. *See* Trial Court Opinion, 10/2/2015, at 4-6.

5328(a) factors, and reexamined only Section 5328(a)(7), which requires consideration of the well-reasoned preference of the child. Trial Court Opinion, 8/19/2016, at 3. While the court acknowledged that Child would prefer to live primarily with Mother during the school year, the court concluded that such a change would not be in Child's best interest. *Id.* at 4-6. The court emphasized that Child has attended school in Father's school district for his entire academic career, is doing well in his current school, has no behavioral problems, and participates in extracurricular activities. *Id.* at 5. The court also emphasized that Child has established friendships and relationships within his current school. *Id.* The court explained, "Child is doing exceptionally well under the current custody arrangement and it would not be in Child's best interest to uproot him from his school, friends, and activities he has known his whole life." *Id.* at 6. "Child did speak to Father about his concerns, and Father indicated he would change his work schedule to allow him to be home when Child returns from school." *Id.* at 5.

During its interview with Child on August 11, 2016, the trial court asked Child what he thought of the current custody arrangement. Child responded as follows.

A. I do like the summer schedule.

Q. Um-hum.

A. And -- but during the school year, for school, I want to be at my mom's during the week and my dad's on the weekend. I say that because that way I'd be able to spend more time with both of them because when I'm at my dad's during the week, I would

come home, and I would be with [Father's girlfriend], but he would still take two hours.  It would be like two hours or so until he gets home from work --

Q. Okay.

A. -- because he works later than schools goes.

Q. The last time we were here, I think it was about an hour that he was -- when you were at your -- I think you were at your godmother's for an hour.  Has that changed?

A. Huh-uh.

Q. That's the same?

A. But for seventh grade, if I went there, I would come home, and I would be with [Father's girlfriend], but it will take away time from being with him, and he said he can adjust his schedule, but in the morning, so he wouldn't be there in the morning, and [Father's girlfriend] would get me up.  That way I would be able to spend a little more time with him because in the morning, it doesn't take -- it would only be like not even half an hour, so I would be able to spend a little more time with him.

But if I went to school at my mom's, I'd be able to see her more, and then I could go to my dad's on the weekend, and I could see him when he's not working.

Q. Okay.  I'm just a little confused what you said in the morning time.

If you went to school at your dad's house, you're saying that your dad would be there to get you -- get you off to school in the morning?

A. [Father's girlfriend] would.

Q. [Father's girlfriend] would, okay.

And then I was a little confused.  You would be able to see your dad a little bit more in the morning?  You're saying that's --

A. So if he did adjust the schedule and he wasn't there in the morning, that would only be like about half hour [*sic*] I don't see him.

Q. Okay.

A. But if he didn't adjust it, then it would be -- and I would see him in the morning, but it would be about two hours that I didn't see him after school.

Q. Okay. All right. I think I understand.

A. But then I'd still not have extra time with my mom.

\*\*\*

THE COURT: [Child], I want to make sure I understand.

The reason why you're saying you'd like to go to school at your mom's house is because you're trying to maximize the time you have with both parents?

[Child]: Yes.

THE COURT: I didn't want to put any words in your mouth, but that's what I hear you saying.

[Child]: Um-hum.

[Counsel for Mother]: If I may interject, would it also be to spend more time with your brother?

[Child]: Right.

THE COURT: Okay.

N.T., 8/11/2016, at 9-11, 34-35.

While it is true that Child expressed a preference to live primarily with Mother during the school year, the trial court was under no obligation to adjust the parties' custody schedule based on Child's preference alone.

- 11 -

Section 5328(a)(7) is only one of sixteen factors that courts are required to consider when making an award of custody. Our case law is clear that courts must consider each of these factors, and that the amount of weight that a court gives to any one factor is almost entirely within its discretion. **See M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013) (citing **A.D. v. M.A.B.**, 989 A.2d 32, 35–36 (Pa. Super. 2010)) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.").[5]

In this case, our review of the record supports the trial court's findings that Child is doing well in Father's custody, and that Child would benefit from the stability that remaining primarily with Father during the school year would provide. Thus, the court was well within its discretion when it concluded that Child's preference pursuant to Section 5328(a)(7) should not outweigh the other Section 5328(a) factors, particularly Section 5328(a)(4), which requires consideration of the need for stability and continuity in the child's education, family life, and community life.

---

[5] The one exception is that trial courts must give weighted consideration to those factors which affect the safety of the child. **See** 23 Pa.C.S.A. § 5328(a).

Accordingly, we conclude that the trial court did not err or abuse its discretion by denying Mother's petition for modification of custody order, and we affirm the court's August 19, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2017